## UNIVERSITY *v.* FINCH.

1. A sale of real estate made under a power contained in a deed of trust executed before the late civil war is valid, notwithstanding the grantors in the deed, which was made to secure the payment of promissory notes, were citizens and residents of one of the States declared to be in insurrection at the time of the sale, made while the war was flagrant.
2. This court has never gone further in protecting the property of citizens residing in such insurrectionary States from judicial sale than to declare that where such citizen has been driven from his home by a special military order, and forbidden to return, judicial proceedings against him were void.·
3. The property of such citizens found in a loyal State is liable to seizure and sale for debts contracted before the outbreak of the war, as in the case of other non-residents.

APPEAL from the Circuit Court for the District of Missouri; the case being thus:

Daily and Chambers purchased of Elliott, in March, 1860, certain real estate in St. Louis, Missouri. For the principal part of the purchase-money they gave him their promissory

---

* Brown *v.* Hiatts, 15 Wallace, 184; Adger *v.* Alston, Ib. 560.

notes, and to secure the payment of these notes they made a deed of trust to one Ranlett, conveying the property thus purchased, with authority to sell it, on giving notice in a newspaper of the sale, in satisfaction of these notes if they were not paid as they fell due.

The notes were assigned by Elliott to the Washington University, and the money being unpaid and due, the real estate so conveyed was sold by Ranlett in accordance with the terms of the trust deed, to the University, on the 9th day of December, 1862. The trustee made to the University, which was a corporate body, a deed for the land, and the University afterwards sold it for value to one Kimball.

Daily and Chambers were both citizens of the State of Virginia, residing in the county of Mecklenburg, when they bought the land of Elliott, and have resided there ever since. Daily having been declared a bankrupt, and one Finch having been appointed his assignee, Finch, along with Chambers, the other purchaser, filed a bill on the chancery side of the Circuit Court of the United States for the District of Missouri to have the sale decreed void, and to have the proceeds of the sale of the land by the University to Kimball declared a trust fund for their use; and the court decreed accordingly. The ground of this decree was that the sale by the trustees took place during the late civil war, and that Daily and Chambers were citizens of the State of Virginia, resident within that part of the State declared by the President to be in a state of insurrection. From the decree thus made the present appeal was taken.

*Mr. W. H. Letcher, in support of the decree,* citing *Hanger* v. *Abbott,*[*] and *Dean* v. *Nelson,*[†] argued that inasmuch as all commercial intercourse was forbidden between the people of the loyal States and those residing in the insurrectionary districts, both by virtue of the act of Congress and by the principles applicable to nations in a state of war, all processes for the collection of debts were suspended, and that the

_____

* 6 Wallace, 532.                    † 10 Id. 158.

complainants being forbidden by these principles to pay the debt, there could be no valid sale of the land for default of such payment. He also argued that the power in the deed to sell, which required a notice in a newspaper of the sale, was intended to apprise the complainants of the time and place of sale; and that inasmuch as it was impossible for such notice to reach them, situated as they were, no valid sale could be made.

*Mr. J. M. Krum, contra, for the appellant.*

Mr. Justice MILLER delivered the opinion of the court.

The case before us was not one of a sale by judicial proceeding. No aid of a court was needed or called for. It was purely the case of the execution of a power by a person in whom a trust had been reposed in regard to real estate, the land, the trustee, and the *cestui que trust* all being, as they had always been, within a State whose citizens were loyally supporting the nation in its struggle with its enemies. The conveyance by the complainants to Ranlett vested in him the legal title of the land, unless there was a statute of the State of Missouri providing otherwise, and if there was such a statute it still gave him full control over the title for the purposes of the trust which he had assumed. No further act on the part of the complainants was necessary to transfer the title and full ownership of the property to a purchaser under a sale by the trustee.

The debt was due and unpaid. The obligation which the trustee had assumed on a condition, had become absolute by the presence of that condition. If the complainants had both been dead, the sale would not have been void for that reason, if made after the nine months during which a statute of Missouri suspends the right to sell in such cases. If they had been in Japan it would have been no legal reason for delay. The power under which the sale was made was irrevocable. The creditor had both a legal and moral right to have the power made for his benefit executed. The enforced absence of the complainants, if it be conceded that it

was enforced, does not in our judgment afford a sufficient reason for arresting his agent and the agent of the creditor in performing a duty which both of them imposed upon him before the war began. His power over the subject was perfect, the right of the holder of the note to have him exercise that power was perfect. Its exercise required no intercourse, commercial or otherwise, with the complainants. No military transaction would be interfered with by the sale. The enemy, instead of being strengthened, would have been weakened by the process. The interest of the complainants in the land might have been liable to confiscation by the government, yet we are told that this right of the creditor could not be enforced, nor the power of the trustee lawfully exercised. No authority in this country or any other is shown to us for this proposition. It rests upon inference from the general doctrine of absolute non-intercourse between citizens of States which are in a state of public war with each other, but no case has been cited of this kind even in such a war.

It is said that the power to sell in the deed of trust required a notice of the sale in a newspaper, that this notice was intended to apprise the complainants of the time and place of sale, and that inasmuch as it was impossible for such notice to reach the complainants no sale could be made. If this reasoning were sound, the grantors in such a deed need only go to a place where the newspaper could never reach them to delay the sale indefinitely, or defeat it altogether. But the notice is not for the benefit of the grantor in the sense of notice to him. It is only for his benefit by giving notoriety and publicity of the time, the terms, and the place of sale, and of the property to be sold, that bidders may be invited, competition encouraged, and a fair price obtained for the property. As to the grantor, he is presumed to know that he is in default and his property liable to sale at any time; and no notice to *him* is required.

But the authority of certain cases decided in this court is relied on, in which the effect of the state of the late civil war

is considered, in judicial proceedings, between parties residing on different sides of what has been called the line separating the belligerents.

The first of these is that of *Hanger* v. *Abbott.* That case laid down the proposition that when a citizen of a State adhering during that war to the national cause brought suit afterwards against a citizen residing during the war within the limits of an insurrectionary State, the period during which the plaintiff was prevented from suing by the state of hostilities should be deducted from the time necessary to bar the action under the statute of limitations. It decided nothing more than this. It did not even decide that a similar rule was applicable in a suit brought by the latter against the former. And it decided nothing in the question now before us, even if the sale here had been under a judicial proceeding.

Another case is that of *Dean* v. *Nelson.* If the present had been a sale under judicial order, that case would bear some analogy to this, and some expressions in the opinion more general than was intended may, as this court has already said, tend to mislead. That case was a proceeding within an insurrectionary district, but held by our military forces, in a court established by military orders alone. It was a proceeding to foreclose a mortgage on personal property, and it was instituted against parties who had been expelled by military force from their residence, and who were forbidden absolutely by the order which expelled them, and which was addressed to them by name, from coming back again within the lines of the military authority which organized the court. Inasmuch as, without their consent and against their will, they were thus driven from their homes, and forbidden to return by the arbitrary though probably necessary act of the military power, we held that a judicial decree by which their property was sold during the continuance in force of this order was void as to them. To that doctrine we adhere, and have repeated it at this term in the case of *Lasere* v. *Rochereau.**

---

* 17 Wallace, 437.

But this court has never decided nor intentionally given expression to the idea that the property of citizens of the rebel States, located in the loyal States, was, by the mere existence of the war, exempted from judicial process for debts due to citizens of the loyal States contracted before the war. A proposition like this, which gives an immunity to rebels against the government not accorded to the soldier who is fighting for that government, in the very locality where the other resides, must receive the gravest consideration and be supported by unquestioned weight of authority before it receives our assent. Its tendency is to make the very debts which the citizens of one section may owe to another an inducement to revolution and insurrection, and it rewards the man who lifts his hands against his government by protection to his property, which it would not otherwise possess, if he can raise his efforts to the dignity of a civil war.

The case of *McVeigh* v. *United States*,\* holds that an alien enemy may be sued though he may not have a right to bring suits in our courts. And that when he is sued he has a right to appear and defend. "Whatever," says the court, "may be the extent of the disability of an alien enemy to sue in the courts of the hostile country, it is clear that he is liable to be sued, and this carries with it the right to use all the means and appliances of defence."

And this proposition is supported by the authorities there cited as well as by sound reason. If such be the rule in regard to alien enemies in a war between independent states, it should be quite as applicable, if not more so, between citizens of the same government who are only enemies in a qualified sense in a civil war.†

We are of opinion that the sale by the trustee in the case under consideration was a lawful and valid sale, and that the bill of the complainants should have been dismissed. The decree of the Circuit Court is, therefore, REVERSED, with directions to

DISMISS THE BILL.

---

\* 11 Wallace, 259.          † See Masterson v. Howard, *supra*, 99.