JENKINS and others v. HANNAN and others.[1]

*(Circuit Court, S. D. Ohio, W. D. April 19, 1884.)*

1. EQUITY—ADEQUATE REMEDY AT LAW.

Upon a bill in equity to set aside deeds made on orders of sale of lands in judicial proceedings, which were alleged to be null and void, and for an account of rents and profits, *held,* that there was a plain and adequate remedy at law by an action of ejectment for the recovery of the possession of the lands and the mesne profits.

2. SAME—JUDGMENT AGAINST ONE IN REBELLION.

J. was a resident of a county that became a part of West Virginia, and left his home and entered the Confederate army, and continued in armed hostility to the Union until his death. During the time he was so engaged suit was commenced in Ohio by creditors against him, attachment levied on his lands there situated, and constructive service made upon him. Judgment was had, and such lands sold upon orders therefor. Upon bill in equity by his heirs against the purchasers and others in possession to set aside said sales on the ground that said proceedings were void, *held,* (1) that equity had no jurisdiction; (2) that J. having voluntarily left his country for the purpose of engaging in hostility against it, his heirs cannot justly complain of legal proceedings regularly prosecuted against him as an absentee, on the ground of his inability to return or to hold communication with the place where such proceedings were conducted.

In Equity.

*Franklin T. Cahill* and *Goode & Huff,* for complainants.

*T. D. Lincoln,* for defendants.

SAGE, J. The complainants are the children and heirs at law of Albert G. Jenkins, who died May 21, 1864.

The bill sets forth that on the seventeenth day of May, 1862, Albert G. Jenkins was, and had been for many years, the owner in fee-simple of certain improved real estate situate in the city of Ironton, Lawrence county, Ohio, and described in the bill: that in the months of July and August, 1861, certain parties named in the bill brought five several actions at law in the court of common pleas of Lawrence county, Ohio, against said Albert G. Jenkins and others, and sued out attachments based on the non-residence of said Jenkins, which were levied upon said real estate; that service was made by publication, judgments taken in each of said cases,—in three of them by default, and in the remaining two upon trials on the issues joined by answers filed by H. S. Neal, an attorney at law, as attorney for said Jenkins. The complainants allege that Neal acted as such attorney without the knowledge or authority of said Jenkins, who, they allege, never knew of the institution of said suits, or any of them, or of any of the proceedings thereupon. The complainants further allege that upon each of said judgments an order for the sale of said real estate was issued, and upon said order the same was, on the seventeenth day of May, 1862, sold to the defendant William F. Hannan for the

price and sum of $2,750, and was subsequently conveyed by deed to him by the sheriff of said county of Lawrence; that afterwards, to-wit, on the twenty-third day of October, 1866, said Hannan sold and conveyed said real estate to the defendant the Second National Bank of Ironton for the sum of $12,500, and on the twenty-ninth of September, 1868, said bank sold and conveyed a portion of said real estate to the defendant Jeremiah Davidson; that said deeds were inoperative, void, and of no effect, and so was each of them, to pass the title to said real estate, for the reason that said judgments were void; that said bank and said Davidson are in possession of said real estate, and claim the ownership thereof under and by virtue of said judgments, sales, and conveyances; and that they have no other right or claim thereto.

Complainants further aver that prior to the institution of said suits, to-wit, on the twenty-ninth of May, 1861, said Albert G. Jenkins entered the military service of the so-called Confederate States of America, and continued therein and remained within the limits of said so-called Confederacy, without departing therefrom, thenceforth until his death, which they say took place on the twenty-first of May, 1864, at which time he held the rank of major general in said service; that during the year 1861, and for many years prior thereto, he was and had been a resident of the state of Virginia; and that he was from the twenty-ninth of May, 1861, until his death continuously, and without interruption, engaged in armed hostility against the government of the United States, all of which facts were well known to the defendants, one of whom, said Davidson, was on said twenty-ninth of May, 1861, a tenant of said Jenkins, and has ever since that date occupied the same property that he afterwards, as aforesaid, bought; that at the time of making service by publication in said cases said Jenkins was, as each of said defendants well knew, a resident of Virginia, living within the district covered by the proclamation of the president of the United States, and was by said proclamation prohibited from holding any intercourse with persons living in the county of Lawrence and state of Ohio, and being an enemy of the United States, he could not lawfully obey any summons issued or published by any court of said state, nor could he have appeared or defended said suits had he known that they were pending; that said defendant Hannan was an intimate acquaintance of said Jenkins, and at the time of purchasing said real estate at said sheriff's sale openly proclaimed that he did so to save the property for said Jenkins or his heirs. Complainants further allege that said real estate at the time of said sale was well improved, and ever since said time has been yielding the defendants a rental of $100 per month. Wherefore complainants pray the court to set aside said pretended judgments and sales, and declare them null and void; that the said deed to said Hannan may be delivered up and canceled, and an account taken of said rents and profits of said real estate, and charged to the defendants; and that the plaintiffs may be at liberty

to redeem said premises on payment to the defendant Hannan of the amount he paid for said premises at said sale, less the rents and profits as aforesaid; and that thereupon the defendants be ordered and required to deliver possession of said premises to the complainants, free of all incumbrances done or suffered by the defendants, or either of them; and that the deeds under which the defendants claim may be delivered up for cancellation. The bill concludes with a general prayer for relief.

The defense is a denial of the invalidity of the judgments and sale thereunder, and a denial that Neal, who it is admitted acted as attorney for Jenkins, did so without authority. Defendants admit that Jenkins was an inhabitant of the state of Virginia, but they aver that his residence was at the date of said judicial proceedings, and always had been, upon his farm on the south bank of the Ohio river, in Cabell county, in said state, and that from the breaking out of the rebellion, in April, 1861, until June 19, 1863, that part of the state of Virginia lying west of the Alleghany mountains, embracing some 48 counties. and including the county of Cabell, had a state government for the state of Virginia, with its capital at Wheeling, and with Francis H. Pierpoint as governor, and that the same was the legal and valid government of the state of Virginia; that under proceedings had with the consent of the state of Virginia, the state of West Virginia, composed of the counties aforesaid and others, was organized, and was admitted into the Union, and from and after June 19, 1863, became and was one of the states of the United States. And the defendants aver that said Albert G. Jenkins was, during a large portion of his time from the breaking out of the rebellion until his death, in the said county of Cabell, and in other counties of West Virginia. Admitting that said Jenkins was in armed hostility to the government of the United States, they aver that he was voluntarily so engaged, in opposition to the views of a large majority of the inhabitants of Cabell county, and of West Virginia; that none of the territory now included in West Virginia was ever in armed hostility to the government of the United States, or recognized by the government of the United States as enemy's territory, or included in the president's proclamation; wherefore they aver that said Jenkins never was prohibited or prevented from holding intercourse with the citizens of the loyal portion of the United States. Defendants deny that said Jenkins was ignorant of the institution of said suits, and aver that when they were brought, and continuously thereafter, while they were pending, said Cabell county was within the lines of the army of the United States. Defendants deny the averments of the bill as to the rents of said real estate, and the defendant Hannan denies that at the time of his purchase he proclaimed that he made the purchase to save the property for Jenkins or his heirs.

As to the averment by the complainants that defendant Hannan proclaimed, when he bought the property, that he did so for the ben-

efit of Jenkins or his heirs, it cuts no figure in the cause for two reasons: *First*. It is averred that Hannan sold and conveyed the real estate which he purchased to the defendant the Second National Bank of Ironton, and it is not averred, nor is there any attempt to establish by proof, that the bank had any notice that Hannan bought as agent or representative, or for the benefit of Jenkins or his heirs; and as he held the deed in fee-simple, in his own name, the bank took free from any obligation of trust or agency resting upon Hannan. *Second*. Even if the bank had notice, it was competent for the complainants to elect whether to treat the deed to Hannan as a nullity, for the reason that it was made under void judgments and a void sale, or to affirm the sale and deed by waiving their invalidity, and sue to enforce a trust against Hannan. They have elected to treat the judgments as void, and the sale as a nullity, and having made their election, they are bound by it. "A ward or heir may elect to affirm a void sale, and thus entitle himself to the proceeds. When a valid election is once made, it cannot be revoked." Freem. Jud. Sales, § 48; *Jennings* v. *Kee,* 5 Ind. 257.

It may be suggested, also, that if Jennings was at the time of the bringing of the suit, and of the sale, an enemy, inhabiting the enemy's country, and prohibited by the president's proclamation from holding intercourse with inhabitants of the loyal portions of the United States, as the complainants insist, it is at least doubtful whether Hannan could have become his trustee or agent.

No advantage can be taken in this court of mere irregularities or errors in the suits under which the sale of the real estate described in the bill was made, for the reason that those cases could be reviewed, and the errors or irregularities corrected, only by the highest courts of the state. Moreover, under the law of the state of Ohio, it was provided that the reversal of a judgment should not affect the title of the purchaser to lands sold for the satisfaction of the judgment. 51 Ohio L. 57. To establish their title the complainants must therefore proceed upon the theory that the judgments are void. "A void judgment, order, or decree, in whatever tribunal it may be entered is, in legal effect, nothing. All acts performed under it, and all claims flowing out of it, are void. Hence a sale based on such a judgment, has no foundation in law; it must certainly fall. Judicial proceedings are void when the court wherein they take place is acting without jurisdiction." Freem. Jud. Sales, §§ 2, 3, 42. "A void judgment is in legal effect no judgment. By it no rights are divested; from it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars any one. All acts performed under it, and all claims flowing out of it, are void. The parties attempting to enforce it may be responsible as trespassers. The purchaser at a sale by virtue of its authority finds himself without title and without redress." Freem. Judgm. § 117. These statements of the law are sustained by the entire cur-

rent of authority, and they are so well settled that they are not open to question.

The complainants allege, and the defendants admit, that the defendants are in possession. The complainants allege that the judgments and deeds under which the defendants hold are utterly void; that, as has already been stated, is the only claim upon which they can stand. What is there, then, in the complainants' bill within the jurisdiction of a court of equity? If the judgments against Jenkins are void, and the sale and deed made thereunder a nullity, what is there to cancel or set aside? If Hannan acquired no right or title by his purchase, if, as the authorities without exception declare, he was, being a purchaser under a void judgment, a mere trespasser, without right and without title, what need to tender, or offer to pay, the purchase money? If the defendants are, as the complainants insist, in possession of complainants' lands without title, under deeds which are wholly invalid, why is not an action of ejectment the proper remedy? If it be, equity has no jurisdiction. Section 723, Rev. St., provides that suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate, and complete remedy may be had at law. This is but the statement of a well-known rule in equity, and it has been recognized by express enactment ever since the judiciary act of 1789.

It may be urged that the bill prays for an account of rents and profits, but a claim for mesne profits can be asserted in an action of ejectment, and furnishes a plain, adequate, and complete remedy. *Lewis* v. *Cocks*, 23 Wall. 466, is exactly in point, and conclusive. There a bill in equity was filed to recover possession of lands sold in 1863 upon execution, to satisfy a judgment rendered by the provisional court of New Orleans, (a court established by proclamation of President Lincoln while New Orleans was occupied by troops of the United States,) against Cocks, then absent from the state, upon service made upon one Hallysted, who, it was alleged in the petition, was Cocks' agent. Execution was issued, and two houses and lots, the property of Cocks, were sold. The purchaser, one Izard, subsequently mortgaged the property to Lewis, who caused it to be sold under the mortgage, and became the purchaser. Relief was prayed for in the bill on the grounds (1) that the provisional court was a nullity, and the judgment against Cocks void; (2) that no service of process had been made upon Cocks, and that Hallysted was not his agent, and therefore that service made upon him was not valid service as against Cocks; (3) that Izard, the purchaser at the sale made in pursuance of the judgment, professed to be the friend of Cocks, and to be buying the property for his benefit. · The complainants tendered back the purchase money, with interest, and they also demanded (as appears from the argument of their counsel) an account. The court held that the provisional court was a valid court, that the fraud charged upon the purchaser, that he represented that he in-

tended to buy the property for the benefit of the judgment debtor, was not sustained by the evidence, and proceeded, Justice SWAYNE pronouncing the opinion:

" It must be borne in mind that the complainant is not in possession of the property. If the bill alleged only the nullity of the judgment under which the premises were sold, by reason of the non-service of the original process in the suit, wherefore the defendant had no day in court, and judgment was rendered against him by default, and upon these grounds had asked a court of equity to pronounce the sale void, and to take the possession of the property from Izard and give it to the complainant, could such a bill be sustained? Such is the case in hand. There is nothing further left of it, and there is nothing else before us. Viewed in this light, it seems to us to be an action of ejectment in the form of a bill in chancery. According to the bill, excluding what relates to the alleged fraud, there is a plain and adequate remedy at law, and the case is one peculiarly of the character where, for that reason, a court of equity will not interpose. This principle in the English equity jurisprudence is as old as the earliest period in its recorded history. The sixteenth section of the judiciary act of 1789, enacting ' that suits in equity shall not be sustained in either of the courts of the United States in any case where plain, adequate, and complete remedy may be had at law,' is merely declaratory, and made no change in the pre-existing law. * * * In the present case the objection was not made by demurrer, plea, or answer, nor was it suggested by counsel. Nevertheless, if it clearly exists, it is the duty of the court sua sponte to recognize it, and give it effect. It is the universal practice of courts of equity to dismiss the bill if it be grounded upon a merely legal title. In such case the adverse party has a constitutional right to a trial by jury. * * * In the present case the bill seeks to enforce ' a merely legal title.' An action of ejectment is an adequate remedy. The questions touching the service of the process can be better tried at law than in equity. If it be desired to have any rulings of the court below brought to this court for review, they can be better presented by bills of exception and a writ of error than by depositions and other testimony and an appeal in equity. There is another important point which we have not overlooked. It is whether the judgment of the provisional court can be pronounced a nullity without the legal representatives of Anderson, the deceased plaintiff, being before the court as a party. As the first objection is a fatal one, we have not considered that question."

The case of *Ellis* v. *Davis*, decided November 10, 1883, and reported in 109 U. S. 485, S. C. 3 Sup. Ct. Rep. 327, is also in point. There it was held that "where an heir at law brings a suit in equity to set aside the probate of a will in Louisiana as null and void, and to recover real estate, and prays for an accounting of rents and profits by an adverse party in possession, who claims under the will, this court will refuse to entertain the prayer for recovery of possession if the complainant has a plain, adequate, and complete remedy at law. * * * By the laws of Louisiana an action of revendication is the proper one to be brought for the purpose of asserting the legal title and right of possession of the heir at law to the succession, where another is in possession under claim of title by virtue of a will admitted to probate. In a proper case as to parties this action can be brought in the circuit court of the United States; and as it furnishes a plain, adequate, and complete remedy at law, it is a bar to the prosecution

of a suit in chancery." Sarah Ann Dorsey bequeathed by her last will and testament all her property, real and personal, to Jefferson Davis, in consideration of her admiration for him as ex-president of the Confederate States. The bill charged that the will was not valid, and prayed for its cancellation; that it be decreed that the defendant at once surrender possession of all said property; that the defendant be perpetually enjoined from setting up or pleading said alleged will, or any title thereunder, and for an account of the rents and profits received by him of said estate. It was admitted that the defendant was in possession, and that he held adversely to the complainants. The court said, Justice MATTHEWS pronouncing the opinion, that any right which the complainants could assert against the defendant for the rents and profits of the estate was altogether dependent upon their title to that estate, and could not arise until that was established. The court further said that the title which the complainants asserted was not an equitable, but a legal, title, as heirs at law and next of kin of Sarah Ann Dorsey, and was to be established and enforced by a direct proceeding at law for the recovery of the possession which they alleged the appellee illegally withheld; and that there was no ground, therefore, on which the bill could be supported for the account as prayed for.

The bill will be dismissed, at the costs of the complainants. The decree will contain a finding that the complainants have a plain, adequate, and complete remedy at law. See *Lessee of Lore* v. *Truman*, 10 Ohio St. 45.

I have purposely avoided expressing any opinion upon questions argued upon the hearing, and not passed upon, for the reason that it would be manifestly improper to anticipate the questions that will arise if an action of ejectment be brought, but are not necessary for the decision of the cause now before the court.

---

(January 19, 1885.)

UPON PETITION FOR REHEARING.

SAGE, J. I have carefully re-examined the questions presented in this cause on the hearing, and those presented upon the application for rehearing, and am brought to the conclusion that there is no ground for a rehearing. The complainants' bill is framed in accordance with their claim that the court of common pleas of Lawrence county, Ohio, had no jurisdiction whatever in the five cases mentioned in the bill, and that therefore all the proceedings in those cases, and the sale under them, were null and void *ab initio;* and the argument of counsel proceeded on that ground. The defendants are in possession. If the court which rendered the judgments under which the sale was made to their grantors had no jurisdiction, the defendants are mere trespassers, and the action of ejectment is the proper rem-

edy, and equity has no jurisdiction, as was decided upon the hearing. I still adhere to that opinion. The case of *Hipp* v. *Babin*, 19 How. 271, cited with approval in *Ellis* v. *Davis*, 109 U. S. 485, S. C. 3 Sup. Ct. Rep. 327, is to my mind conclusive, not only as to the proposition above stated, but also against the claim that the court should retain the bill for an account of rents, profits, and improvements, as well as against the claim that the parties may confer jurisdiction by consenting to recognize the parties in possession as trustees, to whom the complainants may pay the amount, with interest, paid by their grantors at the sale made by order of the court, under which they claim. See, also, *Root* v. *Railway Co.*, 105 U. S. 212.

But independently of this view, and conceding for argument's sake the jurisdiction of equity over the case presented, the bill was properly dismissed upon the authority of *Ludlow* v. *Ramsey*, 11 Wall. 581–589. The language used by Justice BRADLEY in announcing the opinion of the court is applicable here: "But if, as in this case, a party voluntarily leaves his country or his residence for the purpose of engaging in hostilities against the former, he cannot be permitted to complain of legal proceedings regularly prosecuted against him as an absentee, on the ground of his inability to return or to hold communication with the place where the proceedings are conducted. That would be carrying the privilege of *contra non valentem* to an unreasonable extent." See, also, *University* v. *Finch*, 18 Wall. 106–111; *McQuiddy* v. *Ware*, 20 Wall. 14. In this last case it was held that "a man who has neglected his private affairs, and gone away from his home and state for the purpose of devoting his time to the cause of rebellion against the government, cannot come into equity to complain that his creditors have obtained payment of admitted debts through judicial process obtained upon constructive notice." In that case Justice DAVIS, in the course of his opinion, made the following statement, which is strongly in support of the decision by this court in this case rendered after the hearing:

"But if the proceedings, instead of being irregular and voidable, are null and void, as they are characterized in the bill, the remedy at law is complete; for there is in such a condition of things nothing in the way of the successful maintenance of an action of ejectment, which will result, not only in the restoration of the lands, but also of their rents and profits."

The case of *Haymond* v. *Camden*, 22 W. Va. 194, cited by counsel for complainants, is not recognized as authority by this court. It is in conflict with the cases above referred to, and they are the cases by which this court will be guided, without regard to any others asserting the contrary doctrine. Besides, the case of *Haymond* v. *Camden* rests upon a provision of the constitution of West Virginia, adopted since the admission of that state to the Union, and since the close of the rebellion, and effective, if not intended, for the protection and benefit of those who were engaged in the rebellion.

Upon the request of counsel on both sides I state my opinion upon

these questions, which I declined to pass upon in the former decision of this case; it being suggested also that no action at law will be brought.

The application for rehearing is denied.