JENNINGS
v.
KEE.

---

JENNINGS *v.* KEE and Wife.

| 5 | 257 |
| 131 | 29 |
| 5 | 257 |
| 141 | 179 |

In cases in chancery, the Supreme Court will seldom increase the amount of the decree against the appellant, except where it is glaringly inadequate.

Land of an intestate held by equitable title (no deed having been made to him) was sold by his widow, it did not appear by what authority, and a part of the purchase-money was received by the guardian of one of the heirs. In a proceeding by such heir, who had attained to adult age, against the guardian for an account,

*Held,* that it was competent for the heirs to affirm the sale and follow the proceeds.

*Held,* also, that an election to take the proceeds was of itself an affirmance of the sale.

In cases of delinquency and neglect on the part of a guardian, the Courts will presume in favor of the ward and against the guardian, as strongly as the facts will warrant.

An acknowledgment or admission made by an administrator can not bind the heirs.

APPEAL from the *Tippecanoe* Court of Common Pleas. STUART, J.—*Jennings* had been the guardian of Mrs. *Kee.* This was a bill in chancery by *Kee* and wife against *Jennings*, as such guardian.

Monday, *June 12.*

It appears that *James Cory*, the father of Mrs. *Kee*, owned a quarter-section of land in *Ohio*, where all the parties then resided. To pay off a small debt, he exchanged lands with his brother, *Elnathan Cory*, and received for the difference in value a sum sufficient to discharge his indebtedness. He conveyed to his brother, and in 1828, before *Elnathan* had made him a conveyance, died, leaving *Martha Cory*, his widow, and *Abigail* and *Jane Cory*, his children and sole heirs. *Abigail* intermarried with *Jennings*, the appellant; *Jane* with *Kee*, the appellee. At the death of her father, *Jane* was eleven or twelve years old. After the

marriage of her sister, she resided with *Jennings* until her own marriage in 1838.

*Martha Cory*, the widow, and one *Adkinson*, administered on the estate.

*Martha* empowered *Jennings* (it does not appear by what authority) to sell the land. *Jennings* sold accordingly, and the deed was made by *Elnathan Cory* to *Vandeveer*, the purchaser. It does not appear whether *Vandeveer* had any notice of the equity of the *Cory* heirs.

The sale was for 1,400 dollars—half in cash, and the other half on time.

This money, thus passing into the hands of *Jennings* and Mrs. *Cory*, it is contended was paid out on the debts of the estate, though the evidence as to the existence of the alleged debts is conflicting and by no means satisfactory. For instance, the alleged claim of *Elnathan Cory* for from 500 to 800 dollars, which it is contended *James*, the ancestor, was indebted to him at the time of the exchange of land, is but feebly supported and strongly impeached. It is very improbable that *Elnathan* would have paid 200 dollars in the land exchange at the very time that *James* owed him 800 dollars. To credit the difference of the land on the claim, would, unexplained, be the natural course of events. The estate was never settled up, so that there is no means of knowing very distinctly what its situation was.

*Jennings*, the appellant, was appointed *Jane's* guardian, it seems, in *Ohio;* and continued to act as such in this state. It does not appear that he ever settled up his guardianship; so that there are but slender means of ascertaining with accuracy how that stands either.

In 1837, *Jennings* admitted that there were 1,200 dollars to be divided among the three—mother and two daughters; and that he had received *Jane's* share. He afterwards paid 300 dollars.

On this state of facts, there was a decree against *Jennings* in the Court below for 216 dollars and 90 cents. To reverse this decree, *Jennings* appeals.

We are not disposed to disturb this decree. A fair de-

duction from all the facts, would, we think, authorize its increase considerably. But Courts will seldom interfere in that way, unless, as in cases like that of *Benton* v. *Shreeve*, 4 Ind. 66, where the decree is glaringly inadequate in amount.

It is objected that the land was not properly conveyed so as to divest the title of the heirs of *Cory;* and therefore that the proceeds of this irregular sale are to be regarded as held in trust, not for the heirs of *Cory*, but for the purchaser, *Vandeveer*. Perhaps the *Cory* heirs might still proceed for the land; but that point is not before us, and we do not decide it. But admitting it to be so, that does not preclude them from affirming the sale and following the proceeds. It is very clear they can not have both the land and the purchase-money. If they elect to take the proceeds of the land, that is itself an affirmance of the sale. So far as *Kee* and wife are concerned, that election has been made by the institution of this suit. Were this the proper tribunal, the proper parties before the Court, and a proper case made on these facts, a Court of Equity would order a deed of conveyance to *Vandeveer*, and, if thought necessary, appoint a commissioner to convey. We can see no force in that objection.

Nor can we give much weight to the account which *Jennings* sets up in his answer, claiming for *Jane's* board, clothing, &c., while she lived in his family. The evidence is conclusive that her services were of more value than her board, &c. The strong presumption is, that neither *Jennings*, on the one side, nor *Jane*, on the other, ever thought of making charges of this character against each other till after the institution of this suit. *Jennings* having set up such matters in defence, it was competent for the complainants to show that the matters charged had been paid for or discharged in some other way.

The whole case looks bad, or at least inexcusably negligent, on the part of *Jennings*. Why did he not settle with the proper Court as guardian, and produce the record of that Court as evidence of the correctness of his course in discharging the duties of the trust he had accepted? In

May Term, 1854.

all cases of delinquency and neglect, the Courts will presume in favor of the ward and against the guardian, as strongly as the facts will warrant.

It is contended that the Court below erred in suppressing that part of Mrs. *Cory's* deposition, which related to the amount of moneys received by *Jennings* as guardian. Had Mrs. *Cory* proceeded legally to sell the realty as administratrix, and disposed of the proceeds according to law, the records of the proper Court would have shown how much money she had paid to *Jennings* as guardian, after the administration was closed. This she did not do. The heirs were the owners of the real estate, and are not to be charged at the pleasure of the executor or administrator with debts. *Mooers* v. *White et al.*, 6 Johns. C. R. 360. As against the heirs, or either of them, her evidence was clearly inadmissible. Nor was she, in any sense, either individually or in her fiduciary capacity, a party or privy, so as to entitle her admissions to the character of evidence. She stood in no such relation that either what she said or did could bind the heirs. She could only affect their rights by a judicial proceeding in substantial conformity to the statute. Her evidence was correctly excluded.

*Per Curiam.*—The decree is affirmed, with 2 per cent. damages and costs.

*R. C. Gregory, J. Pettit* and *S. A. Huff*, for the appellant.

*G. S. Orth, E. H. Brackett* and *H. W. Chase*, for the appellees.