ALLEN ET AL. *v.* THE STATE, EX REL. STEVENS.

GUARDIAN AND WARD.—*Additional Bond.*—Under the statute of this State, section 122, 2 R. S. 1876, p. 539, a guardian may be required to execute an additional bond, to secure the performance of his general duties.

SAME.—*Liability of Sureties on Additional Bond.*—Where it does not appear that such additional bond was executed as meiely subsidiary to, or security for, the original bond, a surety on the additional bond is primarily bound for a breach thereof, either separately in a suit thereon against him alone, or jointly with the surety on the original bond, in a suit on both bonds, against all the sureties.

SAME.—*Evidence, Order of Introduction.*—*Practice.*—In an action on the additional bond, the bond itself may be given in evidence without first establishing its approval by the court, as evidence of the latter fact may be afterward given.

From the Washington Circuit Court.

*T. L. Collins, A. B. Collins, A. A. Cravens* and *S. B. Voyles*, for appellants.

*D. M. Alspaugh, J. C. Lawler, S. H. Buskirk* and *J. W. Nichol*, for appellee.

PERKINS, J.—Suit by the appellee, against the appellants, on a bond in the words following, which, it is alleged, the obligors executed to the State of Indiana:

"Know all men by these presents, that we, Sarah J. Allen, Thomas M. Tucker and John Manley, of said county, are held and firmly bound unto said State of Indiana, in the penal sum of twelve thousand dollars, for the payment of which, well and truly to be made, we and each of us bind ourselves and each of our heirs, executors and administrators, jointly and severally, firmly by

these presents. Sealed with our seals, and dated this 12th day of December, in the year one thousand eight hundred and sixty-six. The condition of the above and foregoing obligation is such, that whereas, on this 12th day of December, A. D. 1866, in and by the court of common pleas of said county, it was ordered to give additional bond as guardian of the person of estate of Frank, Charles and Heber Allen, minor heirs of Joseph M. Allen, late of said county, deceased, and minor heirs of said decedent; now, if the said Sarah J. Allen shall honestly, faithfully, well and truly perform all the duties enjoined upon her by law, and obey all orders of said court made touching said guardianship, according to law, then the above obligation to be void; else to remain in full force and virtue in law.

(Signed,)       " SARAH J. ALLEN, [SEAL.]
                " J. M. TUCKER,    [SEAL.]
                " JOHN MANLEY.    [SEAL.] "

The bond was a little confused in some of its phraseology, but not void. *Potter* v. *The State*, 23 Ind. 550; 2 R. S. 1876, p. 588, sec. 5.

The breach of the bond alleged is the failure of said Sarah, guardian, to pay over money to her successor. She was removed from the guardianship in 1874, and Warden W. Stevens was afterward appointed her successor, on whose relation this suit was brought. *Blackwell* v. *The State*, 26 Ind. 204.

Demurrer to the complaint, for want of facts constituting a cause of action, overruled, and exception entered.

The complaint might have been subject to a motion to be made more certain, but we think it good on demurrer, if the bond itself could be made the foundation of the suit.

Tucker and Manley, the sureties, answered:

1. General denial;
2. That the guardian had fully accounted;

3. That the guardian had applied all the funds to the education of her wards; and,

4. That the guardian had invested the funds in United States bonds, which had been lost without her fault, setting out the circumstances.

Said Sarah Allen, the guardian, answered in four paragraphs, substantially like the paragraphs of answer of the sureties.

The fourth paragraph of the separate answers of the principal and sureties was held good on demurrer.

Replies were filed.

The reply to the fourth paragraph of answers was in two paragraphs:

1. General denial; and,

2. That said bonds, mentioned in said answers, were deposited with D. W. Peck & Co., by said Sarah J. Allen, about eight years before the fire and pretended loss and destruction of said bonds, alluded to in said fourth paragraph of answers, and not in or about July, 1874, as stated by her. And plaintiff further alleges, that, after said bonds were deposited as aforesaid, and long before said fire occurred, the said defendant had full and ample notice from divers persons that the said Daniel W. Peck, of the firm of D. W. Peck & Co., was not trustworthy, and that said bonds were not safe or secure in the care and custody of the said Peck, or of the firm of D. W. Peck & Co.; that, although said defendant was so notified of the danger and insecurity of the said bonds in the care and custody of the said D. W. Peck & Co., she failed to call upon or in any manner to inquire of the said Peck, or the said firm, whether the said funds (bonds) were still in the custody of the said Peck, or the said firm, and safe and secure. Wherefore the plaintiff says the said defendant was guilty of negligence in the management and care of the said bonds, and prays judgment.

Trial by the court; finding for the plaintiff; motion for a new trial overruled, and judgment on the finding.

It is assigned for error in this court by the sureties:

1. That the court below erred in overruling the demurrer to the complaint; and,

2. That the court erred in overruling the motion for a new trial.

By the principal, Sarah J. Allen, the assignment is :

That the court erred in overruling her motion for a new trial.

The evidence is in the record.

The bond on which the suit was brought was the first item. It was admitted, over the objection of the sureties, stating as grounds thereof, that the same was an additional bond, etc., and that it did not appear that the bond was ever approved, etc. This latter fact might be shown after the admission of the bond.

Next, the report of the said guardian, made in 1873. Then, the record of the proceedings in the court, releasing the sureties of said guardian, on their application, and the removal of the guardian from her said office. It was proved that the relator in this suit was appointed guardian, and had demanded the funds of said Allen, the removed guardian.

Evidence followed in regard to the investment of the funds in the guardian's hands in United States bonds, the loss of the bonds, and the circumstances attending it, in 1874, which closed the evidence, on which the court found for the plaintiff, assessed her damages at two thousand five hundred and forty-three dollars and sixty-three cents, " and the court adds thereto the sum of two hundred and fifty-four and $\frac{36}{100}$ dollars, being ten per cent. thereon, making, altogether, the sum of twenty-seven hundred and ninety-seven and $\frac{99}{100}$ dollars," etc.

The main facts seem to be, that, some time in 1866, Mrs. Sarah J. Allen was appointed guardian of the minor heirs of Joseph M. Allen, deceased, and gave bond; that, on the 12th day of December of the same year, said guardian, for some cause not stated, was required by the

court to execute an additional bond; and, in compliance with said requisition, the bond here sued on was executed; that said guardian continued to act as such guardian till the last of October, 1874, when, on application of her sureties to be released, she, said guardian, was unable to give new sureties, and was removed, and the relator in the present suit substituted; that, before said release of the sureties in the bond in suit, the loss of the property of the wards occurred, viz., in the summer of 1874.

We do not think, that, under the practice of this court, we can reverse the judgment upon the weight of the evidence. *Jennings* v. *Kee*, 5 Ind. 257.

The main question in the cause is, can the action be maintained upon the bond sued on?

The bond was an additional bond, given to secure the faithful performance, by the guardian, of her general duties as such. It was not a bond executed upon an application to sell real estate, under sec. 18, 2 R. S. 1876, p. 595.

It is, however, insisted by the appellants, that, being an additional bond, it could not be sued upon until the security of the original bond had been exhausted, and that it was necessary that the complaint should show the fact of such exhaustion.

It was decided, in *Salyer* v. *The State*, 5 Ind. 202, that the original bond of an administrator covered the proceeds of sales of real estate to pay debts, and that the sureties in such bond were accountable for their proper application, and "that under the statute of 1831, no suit could be maintained upon the additional bond until the penalty of the original bond was exhausted."

In *Warwick* v. *The State*, 5 Ind. 350, it was held, that, under the statutes of 1838, such is not the operation of the original bond of a guardian, as to the proceeds of the sale of real estate.

It is said: "This bond," that is, the bond on the sale of real estate, "is entirely distinct from, and disconnected with, the guardian's original bond. It is not treated as

additional to it, to make up its sufficiency. No matter how ample and satisfactory the original bond may be as a security, the sale can not be permitted upon it, but only upon a new, independent obligation. This fact distinguishes the case of a guardian, under the statutes of 1838, from that of an administrator under those statutes, touching the sale of real estate, and furnishes the reason for a different decision in this suit from that made in *Salyer* v. *The State,"* *supra.* See the provisions as to sales by administrators and guardians in the code of 1838, pp. 183 and 194.

It is disclosed in the opinion in the case of *Salyers* v. *Ross,* 15 Ind. 130, that the ruling in *Salyer* v. *The State, supra,* was made upon the theory that it appeared that the statute itself made " the second bond not a primary security, ' but only subsidiary to the original bond given by the administrator.' "

Whether that case was correctly decided or not, is not material in this case. It was decided upon statutes not now in force, and is not a precedent for the decision to be made in the cause now in judgment. There is nothing in the terms of the bond, or in any statute under which it was given, from which the court can infer that this second bond was not to be a primary security. This is a case in which the court, as it had the power to do, required a guardian to give an additional bond as security for the discharge of the general duties of the office; and the question is, when and how are the obligors liable upon it? What is the general rule of law on this point?

We have said the court had the power to require the bond. True, the following provision of the code of 1838, p. 197, may not be contained in the code of 1852:

" *Provided however,* that said court in the exercise of the discretion above specified may refuse to remove such executor, administrator, or guardian, when such executor, administrator, or guardian shall tender other security to

the satisfaction of said court; and that from the time of giving such other security, the former security shall in nowise be liable for the future acts of such executor, administrator, or guardian."

And perhaps the same may be said of the following sections of the code of 1843, p. 669:

" Sec. 38. It shall be the duty of said courts to examine the bonds of all guardians, at least once in every two years; and if upon such examination, any such courts shall have doubts of the solvency or sufficiency of the sureties in any such bond, the court shall cite such guardian to show cause why he shall not execute a new bond, with surety or sureties to the satisfaction of the court.

" Sec. 29. If upon the hearing of such matter, the court shall require a new bond with sufficient sureties, and such guardian shall fail to comply with the order of the court, he shall be removed from his said trust, and his letters revoked and rescinded, and another guardian appointed in his place."

But the court, under our present statutes, has power to require such new or additional bond. 2 R. S. 1876, p. 539, sec. 122; *Potter* v. *The State*, 23 Ind. 550. See *Potter* v. *The State*, 23 Ind. 607.

We proceed, then, to consider the question as to the general rule of law touching the liability of the obligors in such bond.

In *The County of Mahaska* v. *Ingalls*, 16 Iowa, 81, the court, by Judge DILLON, say:

" This action was against the sureties in the ' new or additional bond,' of the deceased county treasurer. The bond was not retrospective in its terms. Consequently, while the sureties would be bound for the public moneys in the hands of their principal, at the time of the execution of the bond in suit, although a previous bond then existed with different sureties, and also for money subsequently coming into his hands, yet they would not be bound for his past derelictions of duty or misconduct.

*Townsend* v. *Everett*, 4 Ala. 607; *Farrar* v. *United States*, 5 Pet. 373; *Postmaster, etc.,* v. *Norvell*, 1 Gilpin, 126; *Myers* v. *United States*, 1 McLean, 493; *United States* v. *Linn*, 1 How. U. S. 104."

In *Vivian* v. *Otis*, 24 Wis. 518, the above doctrine is approved, and the following additional cases cited in support of it: *The United States* v. *Boyd*, 15 Pet. 187; *Bessinger* v. *Dickerson*, 20 Iowa, 260.

We nowhere in these cases find the point made, that suit would not lie on the additional bond till the original was exhausted.

In *The Commonwealth* v. *Cox's Adm'r*, 36 Pa. State, 442, the following decision was made:

" The first sureties of the guardian ought to have asked for ' counter securities,' or surety for their own indemnity under the 28th section of the Orphans' Court law of 1832; but instead of that they asked for ' other and further security' under the 22d section; and the court ordered that and it was given. The decree and the bond under it show this and nothing more. The result was, that to the three sureties of the first bond, there were added by a second bond two others; and the whole five are all alike bound for a full performance of all the guardian's duties. A careful examination of the case makes this quite plain. It follows, of course, that all are alike bound to supply the defaults of their principal: Theobald on Pr. and Surety, sec. 287; and the case of *Smiton* v. *Miller*, 3 Ross's Leading Cases, 42, shows this. That case is just like this, except that the new surety there was not given in court. It follows further, that, as none of the sureties appear in the case stated to be insolvent, each is bound for one-fifth: Theobald, sec. 282." See Schouler Dom. Rel. 492, 2d ed., and cases cited.

It may be proper that we should refer again to the question of intention in the execution of the bond, and quote the language of Story, 1 Eq. Jur., sec. 498:

" So, if there should be separate bonds, given with dif-

ferent sureties, and one bond is intended to be subsidiary to, and a security for, the other, in case of a default in payment of the latter, and not to be a primary concurrent security; in such a case, the sureties in the second bond would not be compellable to aid those in the first bond by any contribution.

But, where such intention does not appear, the obligors in the second bond, as we have shown, are liable for breaches of it, either in a separate suit upon such bond, or in a joint suit against them and the obligors in the first bond, upon both bonds; and it is not necessary in this case that we enquire which, for the appellants were clearly liable upon the second bond, as a "primary concurrent security," and no question as to the joinder of parties is made. See *Armstrong* v. *The State*, 7 Blackf. 81.

The losses charged in this case all occurred under the additional bond.

We cite, as supporting the decision herein made, *Owen* v. *The State*, 25 Ind. 371, *Potter* v. *The State*, 23 Ind. 550, and *Shook* v. *The State*, 53 Ind. 403, 408.

In the latter case it is said:

"Finally, it is objected, that the bond could not be sued upon until the original bond, given by the guardian upon his taking out letters of guardianship, was exhausted, or the sureties thereon were shown to be worthless. The authorities are the other way."

The judgment is affirmed, with costs.