## RUSH *v*. THE STATE, EX REL. BIXLER, GUARDIAN.

### [No. 2,411.   Filed March 11, 1898.]

BONDS.—*Principal and Surety.—Discharge of Surety.—Guardian and Ward.*—The only way in which a surety can be released from liability on a guardian's bond is by complying with the provisions of section 2517, Horner's R. S. 1897. *pp. 525-535.*

SAME.—*Filing New Bond.—Release of Surety on Original Bond.— Guardian and Ward.*—The filing of a subsequent bond by a guardian before receiving pension money due his ward will not release the surety on the original bond given by such guardian at the time of his appointment, as such second bond was an additional bond, and cumulative in its legal character. *pp. 525-535.*

SAME.—*Guardian and Ward.—Additional Bond.—Order of Court.*— The fact that the court used the words "new bond" in its order showing the filing of a second bond by a guardian will not change the legal status of the parties or the binding effect of either bond. *p. 535.*

From the Whitley Circuit Court.   *Affirmed.*

*Andrew A. Adams*, for appellant.

*E. K. Strong*, for appellee.

WILEY, J.—This was an action upon a guardian's bond, and the instrument sued upon was executed May 22nd, 1890.   One James Arnold was the guardian, the appellant was the only surety; and the penalty of the bond, which is in the usual form, was $100.00.   The beneficiaries of the bond were the minor heirs of one William Blaine, deceased.   The complaint charges that the guardian deserted his trust and fled from the State, was removed by the court, and that he converted to his own use the funds of the estate.   The complaint further avers that the relator was appointed and duly qualified as the successor of the said Arnold.   The principal in said bond was made a party defendant, but he was not served with process, and the action was dismissed as to him.   The appellant answered in one paragraph, a demurrer to

which was sustained, and this ruling of the court is challenged by the assignment of errors. The answer admits the execution of the bond, but avers that at the time of its execution there was no estate whatever belonging to the heirs of said William Blaine, and that the purpose of the appointment of said Arnold as such guardian, was to apply for a pension for said wards, and that said bond was in a nominal sum for the sole purpose of completing such appointment to enable said Arnold to apply for such pension; that no sum of money or any property of any character came into the hands of said guardian until his subsequently filing a new bond, and until after its approval in open court; that, after the execution and approval of the bond sued on, said Arnold made application to the government of the United States for a pension for his said wards, which was allowed; and that on account thereof he received $500.00, but before receiving the same and in obedience to the laws of the United States and the regulations of the pension department, said guardian, at the April term 1891 of said Whitley Circuit Court, the same having jurisdiction of said guardianship, appeared and filed a "new bond" in the penalty of $1,000.00, conditioned for the faithful discharge of his duties as such guardian, with one Thomas Arnold as surety thereon, which bond was duly approved by the judge of said court, and a record made thereof in the proper order book as follows: "Guardianship of minor heirs of William Blaine deceased. Comes now James Arnold, guardian herein, and files new bond in the sum of one thousand dollars, in these words (here insert), and said bond is examined and approved, and said guardianship continued." The answer further charges that said guardian continued to act under said bond, and filed a report in September, 1893, which was duly approved

and said guardianship continued till his removal by the court. That no loss whatever occurred in said guardianship prior to the filing of said new bond, and that whatever default has been made by said guardian was made after the filing and approval of said new bond.

The contention of the appellant is: First, that the filing and approval of the new bond superseded the old one; and, second, that unless it is shown that there was some defalcation during the life of the old bond, there is no liability under it, after the approval of the new one. These two propositions may be very properly considered together, as they are each dependent upon the construction of the law, as applied to the facts averred in the answer.

For an intelligent discussion of the law governing the liability of sureties on a guardian's bond, we should first look to the statute which primarily fixes such liability. Section 2515, Horner's R. S. 1897, provides that before any person shall be appointed guardian of any minor, that he shall file a statement in writing of the whole estate of such minor, and shall give bond with two or more sureties, in penalty double in amount of the personal property, etc., which bond must be approved by the clerk or court. Section 2517, Horner's R. S. 1897, provides how sureties may be released from further liability. It is the recognized law every where, that for any default in his fiduciary capacity, a guardian and his sureties are liable on his bond to the extent of the loss, not exceeding the amount of the bond.

The averments of the answer are confessed as true, by the demurrer, and to determine the respective rights of the parties, we must apply the provisions of the statute and the law as fixed by the adjudicated cases to them. Counsel have not cited us to any case

directly in point, and the most diligent search on our part has failed to find any. The question here presented is not free from doubt, and the conclusion reached is the result of the most careful consideration. and conscientious convictions, and we fully realize the importance of the principles involved. Pointedly and briefly stated, the appellant is liable, unless he was discharged from liability, by the guardian giving a new bond under the facts pleaded. If he was released, he was released by operation of law and not by a proceeding under the statute cited. If the subsequent bond was an additional bond, it would then be cumulative and not work a discharge or release. We have no doubt but what the court can in any case, under its supervisory power over trusts in its hands, order the trustee to execute an additional bond, if, in the judgment of the court, a former bond is insufficient to cover the estate in the hands of such trustee, under the provisions of the statute. In the case before us, however, the "new bond" was not filed by the order and direction of the court, but was a voluntary act on the part of the guardian. We have collected all the authorities at our command bearing upon the question involved, and, so far as they are pertinent, will briefly state their holdings. In the case of the *State, ex rel.,* v. *Barrett,* 121 Ind. 92, one of the sureties on the bond petitioned the court, under the provisions of the statute, to be released. His petition was granted, and the administrator was ordered to, and did, file a new bond. Suit was brought on the old bond, and one of the sureties thereon answered that, a cosurety had been released and a new bond filed by order of the court. The Supreme Court said: "It is averred in that answer that the cosurety of Williams, upon a proper proceeding for that purpose, had been released from the bond in suit, and that the admin-

Rush *v.* The State, *ex rel.* Bixler, Guardian.

istrator had, by order of the court, filed a new bond, and that the breaches of the bond alleged in the complaint occurred after the execution of the new bond. We think it should be held that upon filing a new bond the old one was at an end." In the case from which we have just quoted it was held further that the sureties upon the old bond were only liable for breaches occurring before the new bond was filed and approved.

In *Lane* v. *State, ex rel.*, 27 Ind. 108, the sureties upon the bond of an administrator applied to the court to be released, and pending action thereon, the principal voluntarily came into court and filed a new bond, which was duly approved. Thereupon the application of the sureties for release was dismissed, and no formal order of discharge was entered. The question arose as to whether or not the sureties could be released without a formal order of release being entered. The court said: "The proceedings would have been in better form if an order had been entered for the discharge of the sureties on the first bond from future liability, but such an order was not necessary to such discharge. The filing of the new bond, in answer to the application, operated as a discharge, under the statute."

In *State, ex rel.*, v. *Mitchell*, 132 Ind. 461, a guardian was appointed and gave bond with two sureties. Subsequent to the appointment a guardian of the same wards in a foreign jurisdiction sold real estate belonging to them, and the court in this jurisdiction ordered the resident guardian to give another bond before receiving the money from the foreign guardian from the sale of land. This the resident guardian did, to the approval of the court, which bond recited the fact of the sale of the land, and was conditioned for the faithful accounting of the money so received.

Suit was brought on the second bond for a breach, and one of the sureties answered setting up the fact of the giving of the two bonds by the guardian, and averred that the sureties on the first bond were solvent, and that no steps had been taken to collect the same from them. The court said: "It is manifest, we think, that the second bond was not given as subsidiary to or as security for the first bond, but was given as a primary security for the money to be received. *The giving of the second bond did not annul the first,* but was additional security, both bonds continuing and both liable as security for the money received by the guardian, and taking, as we do, this view of the case, the question is settled by the decision of *Allen* v. *State, ex rel.,* 61 Ind. 268, 28 Am. Rep. 673." The court after quoting from that case, continuing say: "In the case at bar there is nothing whatever to indicate any intention to make the last bond subsidiary to the first bond, but, on the contrary, on the face of the bond it appears to have been given as primary security for the money to be received from the sale of the land in Pennsylvania. In this respect it is even stronger in support of the holding that it is a primary security than was the bond in the case of *Allen* v. *State, ex rel., supra,* and the case at bar clearly comes within the rule laid down in that case, and which we think is the true one."

In *Stevens* v. *Tucker,* 87 Ind. 109, Sarah J. Allen was appointed guardian, and gave a bond with Thomas Allen as surety. The surety died and the court required the guardian to file a new bond, which she did, with two sureties. There was a breach on the part of the guardian, for which the sureties on the second bond had to respond, and they brought suit for contribution against the heirs of the surety on the firs' bond. The court said: "The bond upon which the

appellees became sureties was an 'additional bond.' It was not a 'new bond,' given after application for the release of the original surety.   *   *   *   There was no order of court releasing the original surety. There was no application for such release.   The court required the guardian to give an additional bond, and the bond executed by the appellees purported upon its face to be given in pursuance of an order of court requiring an additional bond.   The second bond was not given to indemnify the surety upon the first.   *The bonds were conditioned in the same terms.*

"Where the penalty of the original bond of a guardian is not large enough to recover the assets in his hands, the court may require him to execute an additional bond.   *   *   *   The bond executed by the appellees was an additional bond and cumulative security.   The original surety was not discharged by the giving of the new bond, but both bonds remained valid, and the sureties were all to be deemed co-sureties, bound as such to the wards, and liable to contribution between themselves.   *   *   *   .

"As the right of contribution does not depend upon the contract between the parties, but rests upon principles of equity, and as the liability growing out of Thomas W. Allen's suretyship was not impaired by his death or the settlement of his estate, the fact that he was dead when the additional bond was executed does not release his estate from liability to contribute.   The taking of the additional security did not injure his estate, but, on the contrary, relieved it of a portion of the burden it would otherwise have borne."

In West Virginia it was held that where a guardian gave a bond, under the statute requiring an additional bond, where real estate is sold by the guard-

ian, the sureties on his original bond were not liable for a misappropriation of the proceeds of such sale. *Kester* v. *Hill*, 42 W. Va. 611, 26 S. C. 376. In the same state and in another case it was held that where a guardian had given a bond and subsequently gave another to receive a fund coming into his hands from the sale of his ward's land, the latter bond is primarily liable for such fund. *Findley* v. *Findley*, 42 W. Va. 372, 26 S. E. 433.

In Missouri it was held that where a guardian sells his ward's real estate and gives a bond, under the statute to account for the funds arising therefrom, a special trust is thereby created, and the sureties on the general bond were not accountable. *State* v. *Peterman*, 66 Mo. App. 257.

In Ohio, where a guardian had given a bond with four sureties, and a second bond was ordered to be executed on the motion of the guardian himself, nothing appearing as to its character except the fact that it was called a "new bond" in the court's order, and all the sureties but one were different from those on the first bond, it was said it must be presumed that the second instrument was a new bond under the provisions of a certain statute, and not an additional bond under another provision of the statute. *Pimmill* v. *Baumgartner*, (Com. Pl.) 3 Ohio N. P. 40, 1 O. L. D. 69.

In Mississippi it was held that a bond given by a guardian on his appointment, was not discharged by a second bond required of him on the augmentation of his ward's estate by a new inheritance. *Baum* v. *Lynn*, 72 Miss. 932, 18 South. 428.

In Iowa where a guardian filed a new bond with sureties, but was not discharged or reappointed, and where the sureties on the old bond were not discharged, and where the evidence failed to show

whether he then had the money previously received, or had misappropriated it; it was held that such bond was an additional or cumulative security for the entire guardianship, and that the obligors thereon were liable for the entire defalcation. *Douglass* v. *Kessler*, 57 Ia. 63, 10 N. W. 313.

In Wisconsin, where an additional bond was given as an additional security for a guardian's performance of his trust, it was held that the sureties thereon were liable for moneys on hand at the time of the execution of the additional bond. *Clark* v. *Wilkinson*, 59 Wis. 543, 18 N. W. 481.

The case most directly in point is that of *Sayers* v. *Cassell*, 23 Gratt. (Va.) 525. It was there held that where a guardian gave a bond and it was approved by the court, and later voluntarily gave another bond, in each case with sureties, the latter bond was valid, relating back to the time of the guardian's appointment, and that the sureties on the first bond were discharged.

In many of the states it has been held that where the court has required the guardian to give security in addition to his bond already approved, the sureties on such new bond are deemed to be cosureties with those on the first bond, and equally liable with them for the whole guardianship. As bearing upon this proposition we cite the following: *State* v. *Hull*, 53 Miss. 626; *Loring* v. *Bacon*, 3 Cush. (Mass.) 465; *Commonwealth* v. *Cox*, 36 Pa. St. 442; *Allen* v. *State, ex rel.*, 61 Ind. 268; *Stevens* v. *Tucker*, 87 Ind. 109; *Hutchcraft* v. *Shrout's Heirs*, 1 Mon. (Ky.) 206, 15 Am. Dec. 100; *McGlothlin* v. *Wyatt*, 1 Lea. (Tenn.) 717. But, however, where the penalty of the two bonds differ, the liability is in proportion to the respective amounts. *Jones* v. *Hays*, 3 Ired. Eq. (N. Car.) 502; *Jones* v. *Blanton*, 6 Ired. Eq. (N. Car.) 115, 51 Am.

Dec. 415; *Loring* v. *Bacon, supra; Bond* v. *Armstrong,* 88 Ind. 65.

In *State, ex rel.,* v. *Barrett,* 121 Ind. 92, it was held that a bond executed to secure the faithful administration of personal property does not cover rents and profits from the real estate owned by decedent at the time of his death; and that before he would be entitled to them he must first file a petition, obtain an order of court, and file an additional bond under the statute. It was settled in *Owen* v. *State, ex rel.,* 25 Ind. 371, and adhered to ever since, that the sureties on a second bond of an administrator, in any case where such bond is required by an order of the court, were liable for any breach of the bond after its execution. Where an executor gave bond to faithfully administer his trust, the sureties on his bond are not liable for the misappropriation of money the executor received from sale of real estate, unless such sale is directed by the will. *Reno* v. *Tyson,* 24 Ind. 56.

The duties of administrators and guardians are prescribed by statute and the trust created by their appointment extends only to the duties imposed by statute; and where they file bonds and qualify and take upon themselves the administration of the personal estate of such trusts, the sureties on the bonds so filed are liable only for the faithful accounting of such personal estates. And where they apply to and obtain an order from the court to sell or rent real estate, and file their additional bonds as conditions precedent to such sale or renting, such bonds are alone liable for the funds resulting thereform. *Worgang's Adm'r* v. *Clipp,* 21 Ind. 119, 83 Am. Dec. 343. See, also, *State, ex rel.,* v. *Steele,* 21 Ind. 207, 83 Am. Dec. 346. In *Jones* v. *Blanton,* 6 Ired. Eq. 115, 15 Am. Dec. 415, it was held that the giving of a second bond did not release the sureties on the first. It was held in Kentucky that.

a bond conditioned to perform the judgment of the
court was released from liability by the giving of a
bond replevying an execution which issued on the
judgment. *Gray* v. *Merrill*, 11 Bush. 633.

In the case of a receivership in Georgia, the receiver
was ordered by the court to file a new bond in the
same amount and conditioned as the first, which he
did. His successor in the last trust brought an action
on both bonds. The surety on the first bond inter-
posed the defense that the order requiring the new
bond relieved him from liability, but his contention
was not sustained. The court said: "In defense to
this action, D, the surety on the first bond, contended
that the order requiring the new bond and the clerk's
approval of that bond relieved him from all liability
except for any waste or misconduct of his principal
which occurred previously to the filing of the second
bond. The court ruled that the first bond covered
the whole default of the receiver, whether occurring
before or after the second was given.

"There was no application or request by the surety
to be discharged when, or before the second bond
was required. * * * * The order for a new
bond contained no reference to any purpose on the
part of the court to discharge the surety on the first
bond, or to terminate his liability, or to limit it in
any way whatever. There are no words indicating
that the new bond was to be substituted for the old,
or that it was to stand instead thereof. The second
bond was required, not at the instance of the surety
on the first, but at the instance of one of the parties
to the pending cause. So far as appears it was in-
tended as a mere strengthening of the security af-
forded by the first bond. It was cumulative or ad-
ditional, rather than substitutional. Both upon
principle and the authority of analogous cases, we

think no discharge took place.   2 Am. and Eng. Ency. of Law, 466j; Murfree Off. Bonds, section 221; Brandt Sur., section '461.   In the absence of affirmative evidence to that effect, there can be no presumption that the parties to the litigation or their interests would be benefited by discharging the surety on an existing bond merely because a new bond was required and given."   *Stewart* v. *Johnson*, 87 Ga. 97, 13 S. E. 258.

From the authorities cited and the principles therein discussed, our conclusion is that the facts stated in the answer did not in law, release appellant from liability on the bond.   In this State, under the provisions of the statute, the only way a surety can be released from liability on an administrator's or guardian's bond, is to comply with the letter of the statute, and make his application thereunder for release. This appellant did not do.   Because the United States government required the guardian to file a new bond, or an additional bond, before paying to him the money due his wards as a pension, would not in itself release the surety.   We are unable to find a case in this State, under our statute, which holds that the filing of a new or additional bond, by a guardian, releases the sureties on the original bond, where no application for release has been made.

In all the cases we have collected on the subject, the rights of the sureties have been adjudicated, upon the particular facts in each case.   In *State, ex rel.*, v. *Barrett, supra,* the administrator filed a new bond, on the application of one of the sureties to be released. Upon these facts, the court held that all the sureties were released, as a new bond had been filed upon the order of the court.   In *Lane* v. *State, supra,* the sureties on the bond applied to the court to be released and while their application was pending, the administrator voluntarily appeared and filed a new

bond, and thereupon the application for a release was dismissed and no formal order of release was entered. It was held that as the new bond was filed in response to the application of the sureties to be released, operated as a discharge of the sureties upon the original bond.

The case of *Sayers* v. *Cassell, supra,* as was above said, is strongly in point, and it was there held that the voluntary giving of a new bond operated as a discharge of the sureties on the first bond. With the highest regard for the opinion of the learned court, from which we have quoted, we cannot subscribe to the doctrine therein declared, and we feel fully justified in saying that the great weight of authority, sound reason and strong equity are against the rule there announced. Because the court used the words "new bond," in its order showing the filing and approval of the second bond, can make no difference. The language employed by the court in its order, could not change the legal status of the parties, or the binding effect of either bond. We are constrained to hold that the subsequent bond filed by the guardian, was an additonal bond, cumulative in its legal character, and hence did not release the surety upon the first bond. Judgment affirmed.