# CHARLESTON.

42  611
s46  745

KESTER et al. v. HILL et al.

Submitted September 10, 1896—Decided Dec. 5, 1896.

1. GUARDIAN AND WARD—SALE OF WARD'S LAND—PROCEEDS OF SALE—GUARDIAN'S BOND.
   Where a party is appointed guardian of the estate of infants, and enters into bond as such, and during the continuance of his trust he files a bill under the statute for the purpose of obtaining a decree for the sale of real estate belonging to his wards, it is the duty of the court to see to the investment of the proceeds of sale for the use and benefit of the persons entitled to the estate; and before such sale is made the guardian shall in open court enter into bond with approved security in a penalty equal to double the value of the estate to be sold, conditioned for the faithful application of the proceeds of sale.

2. GUARDIAN AND WARD—SALE OF WARD'S LAND—GUARDIAN'S BOND.
   Where such bond is given in open court, with approved secur-

ity, in a pending suit for the sale of his wards' land, the sureties on his original bond as guardian are not liable for the faithful accounting for the proceeds of such sale, as the statute clearly intends that sufficient bond and security shall be taken by the court in which such suit is pending to protect those interested in its proper application; and it was no part of the duties of the guardian to sell the real estate of his wards until so directed by a decree of the court, and it is the duty of the court to protect the estate by proper security.

W. SCOTT and DAVIS & DAVIS for appellants.

W. SCOTT cited Code, c. 10, ss. 1, 2, 3, 4; 9 Am. & Eng. Enc. Law, 141; Code, c. 83; 2 Brandt, Surety & Guar. 796; 3 Wait, Act. & Def. 261; 31 Ill. App. 483; 43 Mo. App. 16; 32 W. Va. 529; 16 W. Va. 167; 33 W. Va. 737; Code, c. 82, ss. 10, 11, 14.

L. C. LAWSON for appellees, cited Code, c. 82, ss. 14, 100; Code, c. 83, ss. 2, 15; Code, c. 87, ss. 9, 10; Code, c. 118, s. 1; Bart. Ch. Prac. 696; 1 Min. Inst. 505; Sands, Suit Eq. 539, 542; 16 W. Va. 167, 205, 206; 33 W. Va. 737; 32 W. Va. 216, syl. pt. 5.

ENGLISH, JUDGE:

A bill in equity was filed at April rules, 1894, in the clerk's office of the Circuit Court of Harrison county, by Cecil M. Kester, Sadie B. Kester, Hattie Kester, and William H. Kester, who sued by Ella Kester, their next friend, against W. E. Hill, J. B. Sandusky, Henry C. Ross, and James Dunkin, administrator of Gideon Sandusky, deceased, praying that the defendant W. E. Hill be required to settle his accounts as guardian of said infant plaintiffs in the mode. prescribed by law, and seeking to surcharge and falsify certain settlements made by said guardian before Commissioner Werninger in certain particulars set forth in the bill, as well as in all other respects wherein the same might be erroneous and incorrect; that the same might be corrected, and the several items and charges allowed against the complainants might be disallowed; that said W. E. Hill might be removed as guardian of complainants, and another guardian be appointed in his stead, and required to give new and sufficient bond as such; that said W. E. Hill, and

his sureties, J. B. Sandusky and Henry C. Ross, may be compelled to account and pay over to said guardian so appointed instead of said Hill the amount in his hands of the estate due and belonging to the complainants; that the settlements of said J. B. Sandusky be set aside, and declared null and void; that his authority as such guardian likewise be declared null and void, and that said J. B. Sandusky and James Dunkin, as the administrator of the said Gideon Sandusky, his surety, may be compelled to account for and pay over to said guardian so appointed herein all the funds or amount of the estate of the complainants which came into the hands of said Sandusky, and for which they, or either of them, were liable.

The bill, after stating that said W. E. Hill was by the clerk of the county court of said county of Harrison, in vacation, appointed guardian of Cecil M., Sadie B., Hattie, and William H. Kester, as shown by a copy of the order therein filed, marked "No. 1," proceeds as follows:

"He, the said Wm. E. Hill, qualified as the guardian of each of your complainants, and entered into four separate bonds as such in the penal sum of twenty five hundred dollars each, with said J. B. Sandusky and Henry C. Ross as sureties thereon, as evidenced by said order of appointment and copies of each of said bonds, filed herewith, as a part hereof, marked Exhibits Nos. 2, 3, 4, and 5. That immediately thereafter said guardian entered upon the duties of said office, and took control and possession of the estate, both real and personal, of his said wards. That as such said guardian received large sums of money belonging to the estate of his said wards, as follows: From George W. Graves, administrator of the estate of William H. Kester deceased, who was the father of your complainants, a note of M. E. Kester for one thousand three hundred and thirty three dollars and forty six cents and cash four hundred and thirty five dollars and eighty three cents, received March 21, 1885, amounting in the aggregate on said date to the sum of one thousand seven hundred and sixty nine dollars and twenty nine cents, as is shown by an inventory made by said guardian, and recorded in the county clerk's office in Fiduciary Order Book No. 25, page 274, a copy of which

is filed herewith, as part hereof, as Exhibit No. 6; from real estate of said wards, sold under decree of your honor's court entered on the 15th day of May, 1885, directing said guardian to sell their interest in one hundred and forty four acres of land in said county, and two houses and lots in Bridgeport, in said county, which decree was entered of record in the clerk's office of your honor's court on such day in Chancery Order Docket No. 13, page 280 to which reference is made and asked to be read in connection with this bill, and a copy of which is filed herewith as part hereof, and in pursuance of which said decree said guardian sold one-half of said one hundred and forty four acres to Castella Kester for the sum of eight hundred and eighty two dollars, and one house and lot in Bridgeport to Ella Kester for five hundred dollars, as is shown by a decree entered therein by your honor's court as of the 29th day of January, 1886, and recorded in said clerk's office in said Chancery Order Docket, on page 432, a copy of which is likewise filed herewith as a part hereof, marked 'Exhibit No. 7;' and said guardian sold the remaining lot in Bridgeport on the 1st day of May, 1886, to J. B. Sandusky, for the sum of three hundred and sixty five dollars, as is also shown by a subsequent decree therein entered on the 31st day of May, 1886, and recorded in said office and Chancery Order Docket, on page 490, a copy of which is filed herewith as part hereof, marked 'Exhibit No. 8'; the sales of said real estate amounting in all to one thousand seven hundred and forty seven dollars, as therein shown, and the receipt of which said three hundred and sixty five dollars is shown by an inventory made by said guardian, entered of record in said county court clerk's office in Fiduciary Order Book No. 23, page 184, a copy of which is filed herewith, marked 'Exhibit No. 9.'

"Your complainants further charge and aver: That after said Hill had qualified as said guardian, and received the moneys aforesaid, he proceeded to settle his accounts as guardian of your complainants before A. Werninger, a commissioner of accounts in and for said county of Harrison, who made up settlements for each of said wards on the 1st day of June, 1886, and the same having been com-

pleted on said day, seem to have been filed in the county court clerk's office in October, 1886, and were confirmed by the county court. Copies of each of said settlements are filed herewith as a part hereof, marked 'Exhibits Nos. 10, 11, 12, and 13.' That on the 1st day of November, 1888, said commissioner again made up and settled the accounts of said guardian for each of your said complainants, which said reports seem to have been filed in said clerk's office on the 26th day of June, 1889, and were likewise confirmed by said county court, copies of which are filed herewith as part hereof, marked 'Exhibits 14, 15, 16, and 17'; and that said guardian made no other settlements of his accounts with your complainants, but has failed, refused, and neglected to make the same, and doth continue so to do; and that there is now a large amount of money in the hands of said guardian, and J. B. Sandusky, his surety, belonging to the estate of each of your complainants, for which said guardian has failed and refused to account as provided and required by law.

"Your complainants further charge and aver that after said guardian had made these last settlements aforesaid, he soon thereafter left the state of West Virginia, and thereby became a non-resident thereof, and remained away from and out of said state until recently, when he has again returned, and now resides in said county of Harrison; that during the absence of said guardian, that for many years before the estate of your complainants was wasted and neglected and allowed to drift into the possession and control of parties other than said guardian, and who had no right to or control over the same, and who should not have been permitted to have the same, but the same should have been invested or loaned out for the benefit of your complainants, as required by law; that while said Hill was absent from the state as aforesaid the said J. B. Sandusky, on the 26th day of March, 1891, appeared before the clerk of the county court of said county of Harrison in vacation, and made application to said clerk to be appointed guardian of your complainants instead of the said W. E. Hill, and thereupon an order was made and entered appointing said J. B. Sandusky the guardian of your complainants,

and removing said W. E. Hill as such guardian, a copy of which order is filed herewith as part hereof, marked 'Exhibit No. 18'; that on said day said Sandusky, as such guardian, made and entered into four separate bonds with Gideon Sandusky as his surety thereon, as evidenced by said applications, order, and bonds, recorded in said clerk's office, and copies of which bonds are filed herewith as part hereof, marked 'Exhibits Nos. 19, 20, 21, and 22, and that since the execution of said bonds the said Gideon Sandusky has departed this life, and the said James Dunkin was appointed and qualified as the administrator of said Sandusky, deceased. Your complainants further charge and aver that after his said appointment said J. B. Sandusky, on the first day of July, 1893, made settlements as the guardian of your complainants before J. R. Adams, a commissioner of accounts for said county, which were in the following September presented to and confirmed by the county court of said county, copies of which are filed herewith as part hereof, marked 'Exhibits Nos. 23, 24, 25, and 26'; that from said settlements it doth appear that said J. B. Sandusky as the guardian of your complainants, received large sums of money belonging to their estate and still holds and controls the same.

"Now your complainants further charge and aver that said clerk of the county court had no power or authority to remove the said W. E. Hill as the guardian of your complainants, as he so attempted, nor had he any right, power, or authority to appoint the said J. B. Sandusky guardian of your complainants instead of said W. E. Hill; that all such acts and conduct of said clerk in attempting to remove said Hill and to appoint said Sandusky as aforesaid are without authority or sanction of law, and therefore null and void; that the said J. B. Sandusky derived no power or authority from such acts and appointment by said clerk as the guardian of your complainants, and that his said settlements as well as any and all other acts and transactions made and performed by him as such guardian are therefore illegal; and, though his said settlements were so confirmed by said county court, they were not *prima facie* correct or conclusive against your said complainants, but are likewise

null and void, so far as the same in any wise pertains to the interest of your complainants respectively.

"Your complainants further charge and aver that said one thousand seven hundred and sixty nine dollars and twenty nine cents so received from said George W. Graves as the administrator of said William H. Kester, deceased, was principal of personal estate from and after its receipt by said guardian Hill; that of the said one thousand seven hundred and forty seven dollars, the proceeds of the said real estate of your complainants, the said Ella Kester was by said decree, herein referred to, allowed the sum of three hundred and ninety one dollars and twenty two cents as and for her dower interest in said lands, she, the said Ella Kester, being the widow of said W. H. Kester, deceased, who was the father of your complainants; that your complainants were infants at the time their lands were sold by a decree of your honor's court as hereinbefore stated and referred to, and are still infants herein, suing by their next friend, Ella Kester, and that the residue—one thousand three hundred and fifty five dollars and seventy eight cents—of said purchase money for said real estate of your complainants is still real estate in the hands of said guardian Hill. Your complainants further charge and aver that said one thousand seven hundred and sixty nine dollars and twenty nine cents, being the principal of personal estate, can not be reduced in amount by said guardian, except by an order of court as provided in section 8 of chapter 82 of the Code of this state; that no such an order as therein required was ever obtained by said guardian; that said residue—one thousand three hundred and fifty five dollars and seventy eight cents—can likewise not be reduced in amount by any action of said guardian, as to which said guardian was directed by your honor's court in said former decrees hereinbefore referred to, yet, notwithstanding these directions and provisions, said guardian Hill did reduce said respective amounts far below their original sums, and without authority or direction of court, as so required, appropriated a portion thereof to improper uses, and has wasted and neglected their respective estates. Your complainants further charge and aver: that by reference to said settle-

ments made before said Commissioner Werninger as of the 1st day of June, 1886, it may be seen that among numerous other false and erroneous charges and items allowed therein in favor of said guardian and against your complainants are the following: Two hundred and eighteen dollars and ninety one dollars and twenty five cents, as shown therein in settlement for each ward as his just share or portion of the real estate so sold; thus making only one thousand two hundred and thirty seven dollars had and received by said guardian from the sale of said lands for all four of your complainants, when in fact said guardian, for said lands, received one thousand seven hundred and forty seven dollars; and, there being allowed to said widow out of the same as aforesaid the sum of three hundred and ninety one dollars and twenty two cents, there would still remain thereof one thousand three hundred and fifty five dollars and seventy eight cents, less the costs of said suit, in the hands of said guardian, belonging to your complainants, making to each ward the sum of three hundred and thirty eight dollars and ninety four cents, instead of three hundred and nine dollars and twenty five cents, as in said settlements shown. That among numerous other false and erroneous credits allowed said guardian therein in each of said settlements and against complainants are the following: The sum of forty dollars and ten cents, being five *per cent.* commission on eight hundred and one dollars and ninety cents, 'and five dollars for two days allowed guardian extra services and expenses'; making in all charged against your complainants as commission and for extra services and expenses the sum of one hundred and eighty dollars and forty cents, when in fact said guardian should not have been allowed any commission on said sums, or anything whatever, for extra services, for the reason that said settlements, nor none of them, were made within the time required by law, nor as provided by law. That the same is excessive, and should not have been allowed by said commissioner. That the said one thousand and three hundred and fifty five dollars and seventy eight cents, on which in part said commission was calculated, is real estate, and therefore said guardian was no more entitled to a part thereof in the form of a commis-

sion after the sale of said lands than he was to a part of the said lands before said sale. That a guardian can not utilise his office or the estate of his ward, or change the form or condition of that estate for his own benefit or advantage, and to the detriment of his ward. That the eight hundred and one dollars and ninety five cents credited to the estate of each of said wards are insufficient, and therefore incorrect, for the reason that the said guardian is not therein charged with all the estate of your complainants which came to his hands as above shown, and that the balance in said settlements shown to be due each of your complainants on the 1st day of June, 1886, are in fact less than was actually due to them, as said guardian was not charged with the proper amounts coming into his hands as such, and was unjustly credited therein with improper amounts in the way of commission, extra services, *etc.* Your complainants further charge and aver: That for further grounds for reasons for surcharging and falsifying these said accounts and settlements of said guardian Hill, by reference to these said settlements made by said guardian before said commissioner Werninger on the 1st day of November, 1888, it appears that among numerous other false and erroneous charges and credits allowed therein in favor of said guardian and against your complainant are the following: These respective sums as balance due each of your complainants as of the 1st day of June, 1886, which, as therein charged against said guardian, are incorrect, and less than is properly chargeable, for reasons heretofore assigned. That the interest therein is likewise less than is just for the same reasons that among numerous other credits therein erroneously allowed said guardian are the following: The said three hundred and ninety one dollars and twenty two cents as having been paid to said Ella Kester as and for her said dower in said lands sold, when in fact said guardian is nowhere in any of his said settlements charged with his said money, although he received every dollar of said money for said lands, amounting to one thousand and seven hundred and forty seven dollars, and nowhere in any of said settlements accounts for over one thousand and two hundred and thirty seven dollars of the same. That in each of said set-

tlemcnts said guardian is again allowed for extra services and expenses the sum of eighteen dollars and seventy five cents for seven and one half days at two dollars and fifty cents per day, and, in addition thereto, for commission, amounting to about four dollars and fifty cents, which are incorrect and erroneous, and should not have been allowed by said commissioner, for the reason, among other things, that said settlements were not made within the time and as provided by law, and the same is excessive and unwarranted. Your complainants further charge and aver: That by an inspection of each and all of said settlements so made by said guardian it may be observed that the same are incorrect in the following particulars: The said guardian having qualified on the 17th day of April, 1884, the annual balance due these complainants should have been found as of this date in each subsequent year, and the interest thereon charged to said guardian, which was not done in these said settlements; and that these balances so found by said commissioners as of the date therein given have been steadily diminished from the first year to the last; as therein shown, and thereby the principal of said estate was reduced without authority, and contrary to law. Your complainants further charge and aver the said guardian has not made a settlement of his accounts as such since said last above was so made as of the 1st day of November, 1888, and still fails and neglects and refuses to make the same; that both said guardian W. E. Hill and said surety Henry C. Ross are insolvent; that the estate of your complainants has been greatly neglected and wasted and is in great danger of being squandered and lost if allowed to remain in the possession and control of said guardian, and that the conduct of said guardian and the financial condition herein in relation to the estate of your complainants and each of them in the hands of said guardian is such that it is improper and detrimental to the interest of your complainants that their said estate remain longer in the hands of said guardian, or under his control or the security herein given. And they pray, as hereinbefore stated.

"J. B. Sandusky in his own right, and as guardian of Cecil· M., Sadie B., Hattie and William H. Kester filed an

answer to said bill, and W. E. Hill also filed his answer to the same, putting in issue the material allegations thereof, and thereupon the plaintiffs filed an amended bill, making Amaziah Hill and Edgar Hill, together with W. E .Hill, J. B. Sandusky, Henry C. Ross, and James Dunkin administrator of Gideon Sandusky, deceased, parties thereto; and allege by way of amendment that though W. E. Hill was required to give bond in the penalty of two thousand and five hundred dollars, conditioned according to law before collecting any of the deferred installments of purchase money, and was required to execute bond in open court in the penalty of five thousand dollars for each ward, conditioned for the faithful application of said funds, and for the management and preservation of any property or securities in which the same might be invested, and for the protection of the rights of all persons interested therein, said W. E. Hill never gave the said bond in the penalty of two thousand and five hundred dollars as so directed in said decree, with Amaziah Hill and Edgar Hill as sureties therein, nor did said W. E. Hill ever give said bonds so required of him in said subsequent decree of the 29th of January, 1886, or any of said bonds directed to be givien by him; that said Amaziah Hill and Edgar Hill, nor either of them, were the sureties of said W. E. Hill on his bond of two thousand and five hundred dollars, and that they and each of them are insolvent, and they pray as in their original bill they prayed. The defendants W. E. Hill and J. B. Sandusky filed a demurrer to the bill and amended bill filed as aforesaid in the following words:

"*Cecil M. Kester et als.* v. *W. E. Hill et als.* Demurrer. The defendants W. E. Hill and J. B. Sandusky say that the amended bill and also the original bill filed in this cause is not sufficient in law or in equity, because: First. Said cause being a suit in equity, brought by the plaintiff to charge said demurrants, *viz.* the said W. E. Hill, as guardian, and the said J. B. Sandusky, as said Hill's surety on said Hill's bond as such guardian, with money alleged to be due the plaintiffs by virtue of the bond of said Hill, as guardian aforesaid, should have been brought in the name of the state of West Virginia, for the use of

said plaintiff's, the bond upon which said cause of action is based being payable to the state of West Virginia. Second. Because the surety of said W. E. Hill on his official bond as guardian of the plaintiffs can not be joined in a suit with the sureties of said Hill on a bond given by him as required by the order of the court in a chancery proceeding instituted by said Hill as guardian to sell the real estate of his wards. Third. Because the demurrant J. B. Sandusky is in no way responsible for the lands of the plaintiffs sold by said Hill under an order of the court directing said Hill to sell the same, and requiring him to give bond to account for the proceeds of said sale or sales, and can not, as the surety of said Hill on his bond as guardian, be charged with the proceeds of said sale of lands. Fourth. Because the demurrant Hill can not in this cause be charged with the proceeds of the sale of the lands sold by him under an order of the court in the chancery cause brought by him, for the sale of the real estate of his wards, the plaintiffs, but only with such moneys and personal estate as were realized and came into his hands as guardian of said plaintiffs. Fifth. Because, as far as the amended bill is concerned, or any other proceedings that may be or have been instituted in this cause, are concerned, the demurrants, Hill and Sandusky, can not be charged in this cause with the proceeds of real estate alleged to have been sold by the demurrant Hill under a decree of this court in a chancery suit by said Hill, as guardian, to sell the real estate of his wards, although said Hill may not have given the bond required by the court when it ordered such sale. Sixth. Because the demurrant Sandusky can not be charged with the proceeds of the sale of the real estate which this court directed said Hill to sell as said guardian, said court having required said Hill to give bond in the proceedings for the sale of said real estate instituted by said Hill. W. E. Hill, J. B. Sandusky by counsel. W. Scott, Att'y."

The amended bill was answered by J. B. Sandusky and W. E. Hill putting in issue the allegations of the said amended bill.

On the 15th day of May, 1885, a decree appears to have been entered by the circuit court of Harrison county di-

recting said W. E. Hill, as the guardian of said infants, to make sale of certain real estate either at public or private sale, as in his discretion should be most advantageous to the interests of said infants, free of the widow's dower, the undivided interest of said infants in a tract of one hundred and forty four acres of land, also two houses and lots in the town of Bridgeport, for one-third cash in hand and on a credit of six and twelve months as to the residue, with interest from the day of sale, taking from the purchaser bond with good security for the deferred installments, and requiring him, before making such sale or receiving any money under said decree, to execute bond in the penalty of two th  usan.l and five hundred dollars, conditioned according to law. It further appears that in pursuance of the terms of said decree said W. E. Hill sold the undivided interest of W. H. Kester, deceased, in said one hundred and forty four acre tract of land to Castella Kester for the price of eight hundred and eighty two dollars or two dollars per acre, of which she paid in hand `one hundred dollars, and complied with the terms of sale by executing bonds with security for the deferred installments, and that he sold on the same day the house and lot in Bridgeport, in which the defendant Ella Kester resides to said Ella Kester for five hundred dollars, of which sum she paid two hundred dollars, and executed her notes with security for the residue; and the court ascertained the dower interest of said Ella Kester to be three hundred and ninety one dollars and thirty two cents, with which sum said W. E. Hill was authorized to credit her as of the date of sale in her purchase, and before collecting any of the deferred installments of purchase money said W. E. Hill was required to execute in open court bond with good security in a penalty of five hundred dollars, for each ward conditioned for the faithful application of said funds, and for the management and preservation of any property or securities in which the same may be invested, and for the rights of all persons interested therein. On the 31st day of May, 1886, said sale was confirmed, and said W. E. Hill was directed to loan out the money received by him until his wards became of age, and said W. E. Hill was appointed special commis-

sioner to make and deliver to said purchaser a deed for said lot.  On the 19th day of May, 1894, the cause was referred to M. M. Thompson, one of the commissioners of the court, who was directed to state, audit, and settle the accounts of W. E. Hill as guardian of said infants, in the manner required, and that he report the real and personal property of said wards which came or ought to have come into the hands or under the management and control of said guardian, the value and amount thereof, the annual value of the real estate, if any, and the time of the receipts thereof, together with the rents and profits of the real estate which came into his hands as such guardian; what balance, if any, there is or ought to be in the hands of said guardian belonging to each of said wards; and that he specially report upon the foregoing items of credit allowed said guardian in his settlement made with A. Werninger as shown by Exhibits Nos. 10, 11, 12, 13, 14, 15, 16, and 17 which are specially surcharged and falsified in the bill, *etc.*

Said M. M. Thompson, as commissioner, returned his report in pursuance of said decree on the 13th day of December, 1894, which was excepted to as follows:

"The defendant W. E. Hill excepts to the report of Master Commissioner M. M. Thompson:  First.  Because said commissioner erred in charging defendant with compound interest in making up the accounts of defendant with his wards, Cecil M., William H., Sadie B., and Hattie Kester. Second.  Because said commissioner erred in charging defendant with compound interest on the note of M. E. Kester, due the said wards.  Third.  Because said commissioner should have given defendant credit on account of the note of said M. E. Kester, with interest on the said note from its date, February 1, 1888, and, as said interest was payable semi-annually, the same should have been compounded, and said M. E. Kester is liable for said interest compounded.  Fourth.  Because it is not correct or legal to charge said defendant with the entire sum of the balance found due by A. Werninger, commissioner of accounts, in the last settlement made before said commissioner, as said commissioner in said settlement charged defendant with the entire amount of the M. E. Kester note, but does not cred-

it defendant with said note as part of the assets of the estate of said wards in defendant's hands. Fifth. Because it is not true, as stated in the report of Commissioner Thompson, that there appears upon the face of the settlement made by A. Werninger, commissioner of accounts, completed November 1, 1888, 'a most glaring and detrimental error against defendant's wards,' in this: that 'said guardian is credited in the settlement with one-fourth of three hundred and ninety one dollars and twenty two cents so paid said Ella Kester, widow as aforesaid,' and defendant says that sum had not been deducted in said guardian's (this defendant's) first settlement with his wards as alleged and charged in Commissioner Thompson's report, and refers to said first settlement filed as an exhibit in this cause. Sixth. Because a fair settlement of the accounts of this defendant with his wards, the plaintiffs in this cause, will show that this defendant does not owe said wards the sum charged in Commissioner Thompson's report, and that his total indebtedness to them, as considered altogether, is less than five hundred dollars. Seventh. Because the items surcharged and falsified in plaintiffs' bill, and found so properly surcharged and falsified by Commissioner Thompson, and therefore charged against this defendant in said Thompson's report, are not errors, as charged by said bill and report. Eighth. Because there is no evidence in this cause showing that this defendant has been guilty of such negligence or dereliction of duty to his wards as will justify charging this defendant with compound interest. Ninth. For other reasons apparent upon the face of said report and from the evidence and exhibits in this cause."

On the 29th day of May, 1895, the case was heard upon the second report of M. M. Thompson, the amended bill of plaintiffs, the demurrer thereto of W. E. Hill and J. B. Sandusky, their answers to the original bill, replications, and the exceptions of said commissioner's report, and the court overruled the demurrers to said bill and amended bill, and also overruled the exception of said Hill and Sandusky to the report of Commissioner Thompson made at the September term, 1894, but recommitted said report to said commissioner for reasons stated in said decree. On

the 21st day of August, 1895, said commissioner returned his second report, which was excepted to by W. E. Hill and J. B. Sandusky for the following reasons: "(1) Because said report is in effect an argument in favor of the contentions of the plaintiffs in the cause, and not such a report as is contemplated by the law creating and governing commissioners in chancery. (2) Because the finding and report of said commissioner that the defendant W. E. Hill did not give the bond of two thousand and five hundred dollars which he was directed to give by the decree of the circuit court made May 15, 1885, in the chancery cause of said *Hill, Guardian* v. *Ella Kester et als.*, before making sale of the real estate in said cause described, or receiving money by virtue of said sale, is contrary to the evidence that was before said commissioner; the evidence of said W. E. Hill, which was in no way contradicted, or who was not impeached, showing conclusively that said bond was given and the legal inference being that said bond, having been required by the decrees in said cause, was necessarily given before the court would permit said Hill to make said sale or receive money by virtue thereof. (3) Also because the finding and report of said commissioner · that the bond of five hundred dollars for each ward required by the decree of January 29, 1886, in the chancery cause of *W. E. Hill Guardian* v. *Ella Kester et als.*, was not given is likewise contrary to the evidence before said commissioner. (4) Because said commissioner erroneously charges the defendant W. E. Hill and his sureties, J. B. Sandusky and Henry Ross, in his original bond, as guardian, with the proceeds of the sale of the real estate made by said Hill in said chancery cause of *W. E. Hill, Guardian, etc.*, v. *Ella Kester et als.*, when in fact, if said Hill had not accounted for the said proceeds of the sale of said real estate, his sureties, Amaziah Hill and Edgar Hill, in the bonds given in open court in said cause are liable, and not his sureties in his original and general bond as guardian. (5) Because said commissioner had no legal right and erred by charging the defendants J. B. Sandusky and Henry Ross with the proceeds of the sale of the real estate made by said Hill in the aforesaid chancery cause of *W. E. Hill, Guardian* v. *Ella*

*Kester et al.* as surety on said Hill's original bond as guardian for the plaintiffs in this cause.  (6) Because said commissioner erred in charging the defendants W. E. Hill, J. B. Sandusky, and Henry Ross with the sum of two hundred and fifty seven dollars compound interest from May 1, 1886, to September 10, 1895, on five hundred and eighty one dollars and forty six cents; also because said commissioner erred in charging said defendants with one thousand one hundred and one dollars and ninety cents compound interest to September 1, 1895, on the M. E. Kester note for one thousand, three hundred and thirty three dollars and forty six cents.  (7) Because said commissioner erred in charging the aforesaid W. E. Hill, as guardian, with the compound interest on the aforesaid M. E. Kester note, and therefore the said Sandusky and Ross, and Hill's sureties on his original bond as guardian.  (8) Because said commissioner erred in charging defendants Hill, Ross, and Sandusky with three hundred and fifty eight dollars and forty eight cents compound interest to September 10, 1895, on four hundred and thirty five dollars and eighty three cents, 'amount received of W. H. Kester, Adm'r.'  (9) Because said commissioner erred in charging said defendants with thirty one dollars and eighteen cents compound interest to September 10, 1885, on fifty dollars rent of real estate April 17, 1884, to January 29, 1886.  (10) Because said commissioner erred in reporting that the defendants W. E. Hill and H. C. Ross are insolvent.  (11) Because said commissioner erred in finding that the defendant J. B. Sandusky is ultimately liable for the aggregate sum of three thousand, six hundred and eighty five dollars and eighty three cents, as ascertained by said report.  (12) Because said commissioner has not reported the facts to the court in this cause, as he is required by law so to do.  J. J. Davis, W. Scott, Attorneys for Defendants."

"*Cecil M. Kester et als.* v. *W. E. Hill et al.*  Additional Exception to Com. Thompson's Report.  In addition to the exception heretofore filed in this cause, the defendants W. E. Hill and J. B. Sandusky except to the report of Commissioner Thompson for the following reasons:  First. Because said Thompson has charged said Hill and San-

dusky with the proceeds of real estate sold by Hill, in proceeding instituted by him as guardian for the plaintiffs for the sale of said real estate, when it appears in this cause that in said proceedings said Hill was required to give bond pursuant to the provisions of chapter 83 of the Code of West Virginia, and therefore the proceeds of said sale of real estate can not be charged against said Hill, and his surety, J. B. Sandusky, on his bond as guardian, in the proceedings now instituted on said bond or in this cause. Second. Because said Hill is charged in said report with the proceeds of sale of real estate of his wards made by him in a suit brought by him to sell said real estate, in which suit he was required by the court to give bond and good security for the faithful application of the fund that came into his hands from the sale of said real estate, and did give such bond with sureties other than the sureties on his bond as guardian. W. Scott, Attorney for Hill & Sandusky."

On the 21st day of September, 1895, the cause was finally heard, and the court ascertained that said Hill as guardian, and his sureties, J. B. Sandusky and Henry C. Ross, were liable to the plaintiffs in the sum of three thousand six hundred and eighty five dollars and eighty three cents as of the 10th day of September, 1895; also ascertained the amounts due to said ward respectively, and decreed against the said Hill and Sandusky and Ross for the amounts so found; held that said J. B. Sandusky was improperly appointed guardian of plaintiffs without the removal of said Hill; ascertained that a considerable amount of personal property, amounting on the 10th day of September, 1895, to one thousand four hundred and thirty seven dollars and sixteen cents, came into the hands of said J. B. Sandusky, and ascertained the amount thereof due to each of said plaintiffs; removed said Hill from the guardianship of plaintiffs, and revoked his authority as such, and appointed John J. Alexander in his room and stead; and from this decree the defendants W. E. Hill and J. B. Sandusky took this appeal.

The appellants assign no less than sixteen grounds of error. The first is as to the action of the court in overruling

the plaintiffs' bill and amended bill, and the sixth as to the action of the court in charging J. B. Sandusky and H. C. Ross, the sureties of W. E. Hill in his original bond as guardian, with the proceeds of the real estate of Hill's wards sold by him under and by virtue of the decrees of the circuit court in the cause of *W. E. Hill, guardian, etc.,* v. *Ella Kester et al.,* a suit brought by said guardian to sell the real estate of his wards. As this point was assign- ed as one of the grounds of demurrer, we may properly consider these two assignments of error together. This suit was brought by W. E. Hill, guardian, under section 2 of chapter 83 of the Code of West Virginia, to obtain a de- cree for the sale of his wards' real estate. Sections 3, 4, and 5 provide the manner in which said suit may be pro- ceeded in. Section 6 provides, neither the guardian nor guardian *ad litem* or committee or trustee shall be a pur- chaser, either directly or indirectly; and section 7 provides that the proceeds of sale shall be invested under the direc- tion of the court for the use and benefit of the persons en- titled to the estate; but, into whosesoever hands the said pro- ceeds may be placed, the court shall take ample security, and from time to time require additional security, if neces- sary, and make other proper orders for the faithful appli- cation of the fund, and for the management and preserva- tion of any property or securities in which the same may be invested, and for the protection of the rights of all per- sons interested therein, whether such rights be vested or contingent; and section 15 provides that, "before such sale is made the guardian shall in open court enter into bond with approved security in a penalty equal to double the value of the estate to be sold, conditioned for the faithful application of the proceeds of sale; such bond shall be pay- able to the state and the court may thereafter order a new bond with other security to be given if deemed necessary," and section 16 provides that "the provisions of section 7 shall govern as to the application of the proceeds of sale." Now, the sections above quoted of chapter 83 clearly indi- cate that the sale of real estate in pursuance of a suit in- stituted thereunder shall be made under the immediate su- pervision of the court, and that the court shall see to it that

a proper bond is given to protect the proceeds of sale from waste, and conditioned for the faithful application of the proceeds of sale. It is manifestly the intention of the statute that the proper administration of the proceeds of the sale of real estate under this statute shall be provided for by the court, and protected under a bond entirely different from the guardian's bond. In the case under consideration we must presume that the court did its duty, and in fact the decree shows that such bond was required by the court; and W. E. Hill, in his deposition, swears that he gave bond in open court before receiving any money, and that his securities were Amaziah Hill and Edgar Hill, and that he always thought the bond was recorded, and that the bond was approved as sufficient by the court. Whose fault is it that the bond is lost, or not forthcoming, we can not say. Now, section 7 of chapter 82 provides that every guardian who shall be appointed as aforesaid, and give bond when required, shall have the custody of his ward, and the possession, care, and management of his estate, real and personal, and out of the proceeds of such estate shall provide for his maintenance and education, *etc.* This does not authorize him to sell the real estate, only to deal with the rents and profits. If he thinks a sale advisable, he must file his bill under chapter 83 of the Code, or proceed in a summary way, as provided in section 12 of said chapter; and in both instances the proceeds shall be invested under the direction of the court, and, nto whosesoever hands the proceeds may be placed, the court shall take ample security, and require bond in open court of the guardian, with approved security, in a penalty double the value of the estate to be sold, conditioned for the faithful application of the proceeds before a sale is made, showing clearly that it is not the intention of the law that the guardian's bond is to be looked to; and this is reasonable, because the proceeds of the real estate might be greatly in excess of the value of the personalty and rents that would go into the guardian's hands. So in 9 Am. & Eng. Enc. Law, at page 141, it is said: "Where a special bond for the sale of real estate of the ward has been given, the sureties on such bond, and not those on the

guardian's general bond, are liable for the guardian's misuse of the proceeds of such sale." See *Williams* v. *Morton*, 38 Me. 47, where it is held: "A sale and conveyance of the real estate of his wards by their guardian under a license of the probate court, without complying with the requirement of the statute as to giving bond, will vest no title in the grantee; and the money paid for such a deed may be recovered back in an action upon its covenants." "The bond given by a guardian for the faithful performance of his duties is no security for the sale and avails of real estate of his wards sold under license, nor will the omission to give bond under such license be a breach of the conditions of the general bond." "The condition in a guardian's bond that he shall render an account so often as required by the judge of probate is not broken where he has no personal estate of his wards, and had seasonably returned an inventory of their real estate, although he may have sold such real estate under a license, and been cited and neglected to render an account." See, also, *Fay* v. *Taylor*, 11 Metc. (Mass.) 529, and other authorities there cited; and also the case of *State* v. *Harlbridge*, 43 Mo. App. 16, where it is held: "The statutes of this state require guardians and curators, upon their appointment, to give bond in the court appointing them (the probate court) in double the value of the estate or interest to be committed to their care. These statutes further authorize a guardian to sell the real estate of his ward on procuring an appropriate order of the circuit court therefor, and entering into bond to conduct the sale with fidelity to the interests of his ward, and faithfully account for the proceeds. Held that the sureties on the general bond of the guardian were not accountable for the proceeds of the realty thus sold, and that this was so notwithstanding that the guardian charged himself with these proceeds in his general accounts in the probate court." And in the recent case, decided by this Court, of *Findley* v. *Findley*, 42 W. Va. 372 (26 S. E.—) this Court held that: "Where a guardian gives bond, and later land of his ward is sold under decree, and he gives an additional bond to secure its proceeds, and the latter bond is primarily liable for such proceeds." I, however, go further, and hold that the securities

in the general bond, under such circumstances, are not liable for the proper application and accounting for the proceeds of the sale of the real estate. It was not a part of their undertaking. At the time they became sureties in the original guardian's bond, the guardian was not authorized to sell the real estate; and the statute provides that when he is so authorized by decree of court, before making sale or receiving the proceeds he shall give bond in double the amount, for the faithful application of the proceeds of sale; and section 7, chapter 83, provides that "the proceeds of sale shall be invested under the direction of the court for the use and benefit of the persons entitled to the estate, and that, into whosesoever hands the said proceeds may be placed, the court shall take ample security, and from time to time require additional security, if necessary," *etc.* showing the intention that the proceeds of sale should be administered by the court, and not by the guardian under his original bond. For these reasons I think the demurrer to the plaintiffs' bill and amended bill should have been sustained so far as said bill and amended bill seek to charge the defendant W. E. Hill's sureties in his original bond as guardian with the proceeds of the sale of the real estate belonging to his wards, the plaintiffs in this suit; and for the same reason I am of opinion that the court erred in overruling the fourth and fifth exceptions to the last report of M. M. Thompson, commissioner; also in overruling exceptions Nos. 2 and 3, because the evidence shows that the bonds mentioned in said exceptions were given.

The decree complained of is therefore reversed so far as it holds the sureties of W. E. Hill as guardian in the bond given at the time of his appointment as such liable for the proceeds of the sale of the real estate in the bills mentioned, and said decree is affirmed so far as it holds that J. B. Sandusky was improperly appointed as guardian of plaintiffs without the removal of said W. E. Hill as such guardian; and, it appearing that a considerable sum of money belonging to plaintiffs went into the hands of J. B. Sandusky after he was so improperly appointed guardian of plaintiffs, this cause is remanded to the circuit court of Harrison county, in order that it may be properly ascertained from what

source the money was derived which went into the hands of said J. B. Sandusky as the property of these plaintiffs, and that proper decrees may be made as to its collection and investment for the benefit of plaintiffs, and for the settlements of the accounts of said W. E. Hill as guardian; with costs to the appellants.